UNITED STATES of America, Appellee,

v.

Edgar CALLE–CARDENAS,
Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Wilson VELASQUEZ–SANTARIAGA,
Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Mario JARAMILLO–ECHEVERRI,
Defendant, Appellant.

Nos. 86–2093 to 86–2095.

United States Court of Appeals,
First Circuit.

Heard Dec. 9, 1987.

Decided Jan. 27, 1988.

John B. Reilly, Warwick, R.I., by Appointment of the Court, for defendants, appellants Edgar Calle–Cardenas and Mario Jaramillo– Echeverri.

Joan C. Stanley, by Appointment of the Court, with whom Law Offices of Colette Manoil, Boston, Mass., was on brief, for defendants, appellant Wilson Velasquez–Santariaga.

James H. Leavey, Asst. U.S. Atty., with whom Lincoln C. Almond, U.S. Atty., Providence, R.I., was on briefs, for appellee.

Before COFFIN, BOWNES and TORRUELLA, Circuit Judges.

COFFIN, Circuit Judge.

The appeals of appellants Calle–Cardenas and Jaramillo–Echeverri challenge the district court's denial of their motion to suppress evidence of cocaine and other property seized.

Federal agents obtained a warrant from a federal magistrate at 2:08 p.m. on June 13, 1986. Probable cause to issue the warrant was based on information supplied to Agent Burkett, the affiant, by an informant, that appellant Calle was distributing at least one kilogram of cocaine weekly from "his residence at 46–48 Comstock Street (first floor, side door right)." The warrant authorized a search of "the right side, first floor apartment of 46–48 Comstock Street, Pawtucket, R.I. ... occupied by Edgar Calle." Agents surveilling the premises, however, at about the time the warrant was signed by the magistrate, 2:00 p.m., observed a person emerge from an automobile and enter the dwelling through a door on the left side. Soon thereafter, that person emerged from the building and drove off. A check of the license plate number revealed that the vehicle was registered in the name of appellant Calle. The vehicle returned at 3:15, the driver entered the building and returned to the vehicle as before, and again drove off. He was followed and confronted. Identifying himself as one Mazo, he told the police that Calle's residence was in fact the *left* side, first floor apartment, and that Calle had been in the apartment when he, Mazo, had left.

At this time, around 4:00 p.m., the warrant above described had not been executed. Agent Parham, who had supplied the informant's information for Agent Burkett's affidavit, then supplied this new information to the magistrate and obtained a second warrant authorizing search of "the left side, first floor apartment of 46–48 Comstock Street ... occupied by Edgar Calle." The agents then went to the prem-

ises, entered by the left door, found themselves in a common passageway, and, taking the door to their right, forced their way into appellant's apartment. It should be noted that the building, in addition to the outside door on the left, had a front door, an entrance at the right side (which led only to a basement apartment), and a door at the rear.

At this remove it is difficult to see how appellant could devote so much time at the *Franks* hearing, which the district court gratuitously held out of an abundance of caution, or so much space in his brief, to his challenge to the denial of his motion to suppress. We say this because we cannot imagine what the agents could have done better. When their surveillance of the premises created a doubt as to which side of the house was the location of appellant's apartment (or the entrance thereto), they refrained from proceeding on the basis of their warrant and obtained another one with the corrected location.

Appellant spins an argument that, when the agents realized that the informant's information about the contraband being in the right side apartment was in error, they "abandoned" their "reliable informant." Mazo's information, appellant argues, "specifically negates" the informant's "basis of knowledge," leaving no basis for any suspicion that there was contraband to be found in the left side apartment.

The problem with this approach is that appellant would have us read the first affidavit and warrant as permitting only the interpretation that contraband was in a "right side first floor" apartment, with no significance attached to the apartment as being Calle's residence. But, as appellant concedes, we are to give a common sense reading to the affidavit supporting a warrant. *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). In this case we list the following factors to be taken into account: (1) the informant's main thrust was that Calle was regularly distributing large quantities of cocaine from his "residence"; (2) the warrant equates the "right side first floor" apart-

ment with that "occupied by Edgar Calle"; (3) Mazo's information gave accurate directions as to how Calle's residence could be approached; (4) in fact, as the agents found out, Calle's apartment, once the building had been entered from the outside door on the left, *was* on the right and on the first floor; and (5) the outside entrance on the right side of the building did not lead to any first floor apartment. Clearly there was no error. The agents acted with punctilious regard for the integrity of warrant-authorized searches, and the magistrate was amply justified in correcting, on an adequate representation, a detail of a generally adequate earlier basis for a warrant.

■ Appellant Velaquez–Santariaga challenges the court's refusal to direct a verdict. He argues that, when the agents forced their way into the apartment, there was nothing other than his mere presence on which to base his convictions for possession of cocaine and a firearm. He contends that there was insufficient evidence on which to base a finding of constructive possession of the guns and cocaine. A summary of the evidence favorable to the government is the following. An officer took from the left outer door casing of the apartment a tape containing the names of all three appellants. At the time of the agents' entry, all three were in shorts and shoeless; each thereafter went to a closet for other clothes. Cash in the amount of $1,001 and a firearm were found lying on a coffee table in front of a couch. Near the cash and pistol were found an Employee's Withholding Allowance Certificate and a Blue Cross/Blue Shield Group Subscriber Application in the name of Antonio Martinez. The significance of these documents is that they were established, by identity of birth date and social security number, to be those of appellant. The sum of $1,800 was discovered under a couch cushion and a box containing a pistol and holster was retrieved from under the couch. In the pantry was a triple beam balance. Between $208,000 and $278,000 worth of cocaine was seized from the refrigerator and cupboards. We hold that this evidence and the reasonable inferences therefrom adequate-

ly support the jury's verdict. The jury reasonably could have inferred from this cumulative evidence that Velasquez had dominion and control over the area, or at the very least that he had dominion and control over the contraband found in close proximity to his identification documents.

The final issue, raised on appeal by all appellants, is that the district court erred in not instructing the jury as to the meaning of "illegally and unlawfully in the United States." All three defendants were convicted on charges of possession of a firearm by an illegal alien. The government had to prove that the defendants were aliens illegally or unlawfully in the United States. The district court gave the following instructions:

> So next we go on, illegally and unlawfully in the United States. What do we mean by that? Well, to be illegally or unlawfully in the United States means to be willfully in the United States contrary to law. And an act is done willfully if done voluntarily and intentionally with a specific intent to do something which the law forbids, that is to say, with bad purpose, either to disobey or to disregard the law. So that to be illegally and unlawfully in the United States means to be willfully in the United States, contrary to law. And I don't know what else I can tell you on that one.

No objection to this instruction was made, or request for an alternative instruction. And we are not told in what respect the instruction was inadequate. In any event, pursuing a "plain error" analysis, we see no manifest injustice on this record.

*Affirmed.*