UNITED STATES of America, Appellee,

v.

Ramiro VARGAS, Defendant, Appellant.

No. 90–1916.

United States Court of Appeals, First Circuit.

Heard April 2, 1991.

Decided Sept. 25, 1991.

Francis R. Williams, Providence, R.I., for appellant.

Margaret E. Curran, Asst. U.S. Atty., Providence, R.I., with whom Craig N. Moore, Asst. U.S. Atty. and Lincoln C. Almond, U.S. Atty., were on brief, for appellee.

Before BREYER, Chief Judge, and TORRUELLA and CYR, Circuit Judges.

CYR, Circuit Judge.

Ramiro Vargas disputes the sufficiency of the evidence supporting his felony convictions for possessing and conspiring to possess cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 846. We affirm.

## I

### FACTS

On April 28, 1989, Rhode Island State Police executed a search warrant at 48 Brayton Avenue in Providence. When the police entered the apartment, appellant Ramiro Vargas was playing cards in the kitchen with alleged coconspirator Juan Restrepo and a female companion. The search disclosed approximately one kilogram of cocaine concealed with Restrepo's passport behind a wooden baseboard in a bedroom. In the only other bedroom, the police found records of cocaine transactions on top of a bureau, and $2400 in cash in a jacket pocket. In open view in the kitchen, the police found a small brown notebook ledger which the jury could have concluded contained records of cocaine dealings.

At trial, the jury was presented with four important pieces of physical evidence tending to indicate that the apartment at 48 Brayton Avenue had been under appellant's exclusive tenancy and occupancy for several weeks prior to the search: (i) an April 1989 rent receipt in appellant's name, (ii) a public utility business record, bearing appellant's signature, requesting electrical service to appellant as the sole occupant of the apartment at 48 Brayton Avenue, (iii) a Rhode Island Personal Identification Card bearing appellant's signature and reflecting appellant's address as 48 Brayton Avenue, and (iv) a State of Rhode Island Motor Vehicle Division instruction permit, issued April 24, 1989, bearing appellant's signature, and reflecting appellant's address as 48 Brayton Avenue.

Notwithstanding the contrary evidence, appellant testified that he was not in control of the apartment. He stated that he had come to the United States from his native Colombia in March of 1989, and had gone to live with his brother, Rodrigo Vargas, at 48 Brayton Avenue. He explained that he had no proper identification with which to secure employment, since he had entered the United States illegally. He testified that in order to obtain a driver's license to present to prospective employers, he needed proof of residence; therefore he had Rodrigo obtain a rent receipt in appellant's name and requested the electric company to put electrical service in his own name, even though he was not renting the apartment. Appellant further explained that he had no control over who was allowed in the apartment and that he had not invited Juan Restrepo or his female companion to visit on the day of the raid.

The landlord contradicted appellant's testimony. He testified that he rented the apartment to appellant in April 1989 after the previous tenant, Rodrigo Vargas, told the landlord that he was leaving and that appellant would be taking over the apartment.[1]

Notwithstanding appellant's testimony, the jury found him guilty as charged on both counts and the district court denied his motion for judgment of acquittal.

## II

### DISCUSSION

On a challenge to the sufficiency of the evidence, we accord considerable deference to the challenged verdict. Without weighing witness credibility, *United States v. Sanchez*, 917 F.2d 607, 610 (1st Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1625, 113 L.Ed.2d 722 (1991) (citations omitted), "[w]e assess the sufficiency of the evidence as a whole, including all reasonable infer-

---

1. The landlord testified that Rodrigo Vargas said that he did not know whether or not he would be returning to the apartment. According to appellant's testimony, Rodrigo left the country on April 20, 1989—eight days before the search. There was no other evidence as to Rodrigo's plans or whereabouts.

ences, in the light most favorable to the verdict, with a view to whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt." *United States v. Batista–Polanco*, 927 F.2d 14, 17 (1st Cir.1991).

## A. *Substantive Offense*

▋ The substantive offense of conviction required proof beyond a reasonable doubt that the cocaine discovered behind the bedroom baseboard was knowingly possessed by the appellant for purposes of distribution. *See* 21 U.S.C. § 841(a)(1). Possession may be actual or constructive, *Batista–Polanco*, 927 F.2d at 19; *United States v. Martinez*, 922 F.2d 914, 923 (1st Cir.1991); *United States v. Barnes*, 890 F.2d 545, 549 (1st Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1326, 108 L.Ed.2d 501 (1990), sole or joint, *Batista–Polanco*, 927 F.2d at 19 (citing *Santiago v. United States*, 889 F.2d 371, 376 (1st Cir. 1989)); *Barnes*, 890 F.2d at 549 (citing *United States v. Calle–Cardenas*, 837 F.2d 30, 32 (1st Cir.), *cert. denied*, 485 U.S. 1024, 108 S.Ct. 1582, 99 L.Ed.2d 897 (1988)). An accused's "dominion and control over the area where the contraband [is located]," *Martinez*, 922 F.2d at 923–24; *see also Barnes*, 890 F.2d at 549, may be enough to demonstrate constructive possession of the contraband located there. Evidence sufficient to establish that the accused shared dominion and control of the premises[2] can serve as a sufficient basis for inferring a knowing possession of contraband where the evidence indicates that the accused, either alone or jointly with one or more persons, intended to facilitate the possession. *Id.* (upholding jury finding of knowing possession of cocaine base found in container in bedroom of apartment leased by defendant, but jointly occupied with others);

*United States v. Lochan*, 674 F.2d 960, 966 (1st Cir.1982) (reasonable to infer driver knowingly possessed cocaine secreted behind rear seat of automobile owned by passenger). *A fortiori*, evidence establishing that the accused alone controlled the premises where the contraband was discovered can support a reasonable inference that the accused knowingly possessed the contraband. *Barnes*, 890 F.2d at 549–50; *United States v. Robinson*, 857 F.2d 1006 (5th Cir.1988) (sole occupant of house was in constructive possession of drugs concealed therein). *Cf. United States v. Maldonado*, 849 F.2d 522 (11th Cir.1988) (jury was free to conclude that sole occupant of house was in constructive possession of hidden drugs, even though there was a visitor staying in the house at the time of arrest).

▋ We first consider whether a rational juror could have found, beyond a reasonable doubt, that appellant had constructive possession of the cocaine secreted behind the bedroom baseboard. There was sufficient evidence from which the jury could have found that appellant had been the only tenant and occupant of the apartment for anywhere from eight days to several weeks prior to the raid. It could have been found that appellant enjoyed either exclusive or joint dominion and control of the entire apartment during either of these periods. *See Barnes*, 890 F.2d at 550. *Cf. Lochan*, 674 F.2d at 966 ("Drivers generally have dominion and control over the vehicles that they drive.") (passenger was owner of vehicle).

Second, there was ample circumstantial evidence that the cocaine discovered behind the baseboard was intended for distribution. The quantity of cocaine, one kilogram, was large enough to support a fair

---

2. The only direct evidence that appellant did not enjoy exclusive control was his own testimony that he neither rented nor controlled the apartment. Although it would be sufficient to point out that the jury rejected appellant's testimony, *see Batista–Polanco*, 927 F.2d at 17, we briefly explore this defense theory. The only circumstantial evidence that any other person may have been living in the apartment was the presence of clothing in both bedrooms. There was no evidence as to the ownership of any of the

clothing. According to appellant's testimony, Rodrigo left the country eight days before the apartment was raided. As for Juan Restrepo, whose passport was found with the cocaine, appellant testified that he had no idea who had invited Restrepo or his female companion to the apartment on the day of the raid. Thus, the jury reasonably could have concluded that appellant alone occupied and controlled the entire apartment at and for some time before the time of the raid.

jury inference that it was not intended merely for personal consumption. *See United States v. Geer*, 923 F.2d 892, 895 (1st Cir.1991). The large amount of cash, and the drug records in open view, buttressed an inference of intent to distribute. *See United States v. Desmarais*, 938 F.2d 347, 352 (1st Cir.1991) (intent to distribute reasonably inferable from possession of controlled substance and related paraphernalia).

Third, it would be reasonable to infer that no non-occupant, other than a confidant of the tenant, would deposit a valuable cache of contraband in a bedroom of an unsuspecting tenant's apartment from which retrieval would be much more difficult at best, and the risk of discovery and loss far greater, than if a more accessible and closely controlled location were used or the secret were shared with the tenant. *See United States v. Passos-Paternina*, 918 F.2d 979, 985 (1st Cir.1990) ("We defer, within reason, to inferences formulated by the jury in the light of its collective understanding of human behavior in the circumstances revealed by the evidence."), *cert. denied*, —— U.S. ——, 111 S.Ct. 1637, 113 L.Ed.2d 732 and *cert. denied* —— U.S. ——, 111 S.Ct. 2809, 115 L.Ed.2d 981 (1991). Similarly, a rational juror reasonably could infer that only a tenant, an occupant of the premises, or a confidant, would have caused part of the bedroom baseboard to be converted into a removable panel. Finally, the jury was entitled to conclude that there were drug records in open view in a bedroom and in the kitchen and that the only tenant and occupant of the apartment knowingly possessed the $2400 in cash and the drug records found there. Thus, there was sufficient circumstantial evidence on which to base a reasonable inference that appellant, as the sole tenant and occupant, knowingly possessed the hidden cocaine for purposes of distribution.[3]

## B. *Conspiracy*

■ " 'A criminal conspiracy is a tacit or explicit agreement to perform an unlawful act' ...," *Batista–Polanco*, 927 F.2d at 19 (quoting *United States v. Penagaricano–Soler*, 911 F.2d 833, 840 (1st Cir.1990)), which can be established by direct or circumstantial evidence that the putative co-conspirators agreed and intended to facilitate the aims of the alleged unlawful activity, *Sanchez*, 917 F.2d at 610. "Due to the clandestine nature of criminal conspiracies, the law recognizes that the illegal agreement ... 'may be inferred from a development and collocation of circumstances.' " *Id.* (quoting *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

The conspiracy verdict was supported by sufficient evidence as well. Appellant's connection with the cocaine distribution scheme was inferable from circumstantial evidence going well beyond "mere presence" in the apartment at the time of the raid. *See, e.g., Batista–Polanco*, 927 F.2d at 18 (more than "mere presence" is required to establish conspiracy). First, there was the physical evidence, including the rent receipt, the cocaine records in open view, the business record maintained by the electric company and signed by appellant, representing that appellant was the only occupant of the apartment, and the Rhode Island identification card and motor vehicle instruction permit bearing appellant's signature and reflecting 48 Brayton Avenue as his residence. Moreover, the jury heard and disbelieved appellant's testimony disclaiming any tenancy interest and any control of access to the apartment. *See id.* at 17 (credibility determinations resolved in favor of verdict). Thus, there was

---

**3.** The link between appellant and the hidden cocaine was significantly strengthened by the presence of drug records in open view, both in a bedroom and in the kitchen. Even if it were to be assumed that Juan Restrepo or Rodrigo Vargas was occupying the bedroom in which the cocaine was hidden, the presence of drug records in what then would have to be assumed to have been appellant's bedroom, as well as in the kitchen, would support a reasonable inference that appellant, the tenant, was a knowing partner in the possession of the contraband. *See, e.g., Batista–Polanco*, 927 F.2d at 18 ("it runs counter to human experience to suppose that criminal conspirators would welcome innocent nonparticipants as witnesses to their crimes.").

enough evidence to enable the jury to conclude that appellant alone possessed and controlled the apartment.

As concerns Juan Restrepo's participation in the alleged conspiracy, appellant testified that he had not invited Restrepo, or his female companion, to the apartment. In evaluating the credibility of this testimony, however, the jury would have had to compare it with the uncontroverted evidence that appellant and Restrepo were in appellant's apartment at the time the police arrived, that drug records were discovered in open view, and that Restrepo's passport and the cocaine were hidden *together* behind a bedroom baseboard.

We cannot say that no rational juror could have drawn the inference that appellant, the tenant, and his alleged coconspirator, Restrepo, the owner of the passport, agreed and intended to facilitate a scheme to distribute the cocaine secreted at 48 Brayton Avenue. On the contrary, such an inference convincingly explains the concealment of the cocaine and Restrepo's passport in the same hiding place in appellant's apartment. Considering the value of the cocaine and the importance of one's passport, alternative inferences more favorable to appellant's view of the case appear considerably less plausible, if not highly speculative on the present record.[4] Thus, there was no basis in the record for inferring that anyone but Restrepo had an interest in his passport or that anyone other than Restrepo and/or appellant, the only tenant and occupant of the apartment, had knowledge of, and access to, the cache of cocaine and the passport hidden behind the bedroom baseboard. Accordingly, the jury rationally could have concluded from appellant's testimony, the physical evidence, appellant's tenancy, occupancy and presence at 48 Brayton Avenue, as well as from the "collocation of circumstances," *Glasser,* 315 U.S. at 80, 62 S.Ct. at 469, that appellant agreed with Restrepo to facilitate a cocaine distribution scheme by permitting the cocaine and the drug related records to be kept in his apartment.[5]

*Affirmed.*

---

**4.** Certainly it would not have been impermissible for the jury to credit appellant's testimony that he did not know the cocaine and the passport were hidden in the apartment. Nevertheless, with or without appellant's testimony, which we must assume the jury rejected, *see Batista–Polanco,* 927 F.2d at 17, a rational jury was free to infer, from all the evidence, that appellant conspired with Restrepo to possess cocaine with intent to distribute it.

**5.** As the jury supportably found that appellant conspired with Restrepo, it is unnecessary to consider whether Rodrigo Vargas and appellant were coconspirators as well.