January 5, 1993 UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-1426

UNITED STATES OF AMERICA,

Appellee,

v.

MARCO A. ECHEVERRI,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Raymond J. Pettine, Senior U.S. District Judge]

Before

Selya, Circuit Judge,

Bownes, Senior Circuit Judge,

and Stahl, Circuit Judge.

Edward C. Roy, with whom Roy & Cook was on brief, for

appellant.
Zechariah Chafee, Assistant United States Attorney, with

whom Lincoln C. Almond, United States Attorney, was on brief, for

the United States.

SELYA, Circuit Judge. Defendant-appellant Marco A.
SELYA, Circuit Judge.

Echeverri asks us to overturn his conviction on two drug-

trafficking charges. He alleges that the proof was insufficient

to support the jury's verdict; that the government never properly

authenticated a "drug ledger;" and that the court below erred in

permitting an expert witness to testify concerning the import of

the disputed document. Discerning no error, we affirm.

I. BACKGROUND

We limn the facts in the light most favorable to the

government, consistent with record support. See, e.g., United

States v. Maraj, 947 F.2d 520, 522 (1st Cir. 1991).

Armed with a search warrant, a team of law enforcement

officers including FBI Special Agent Frederick Ghio entered

appellant's apartment in Pawtucket, Rhode Island. The living

quarters consisted of a narrow bedroom, a multi-purpose room, and

a bathroom, having a total combined area roughly equal to that of

a one-car garage. When the agents arrived, Victor Gallego was

leaving the bathroom and appellant was seated at a table in the

multi-purpose room. Next to appellant, on the couch and in plain

view, lay an earnings statement in his name. On the back of this

statement was a handwritten column of numbers arrayed in the

following fashion:

2

1000
2000
17000
1000
10000
4000
1000

34000

In the course of the ensuing search the agents found a

tape-wrapped block of cocaine eighty-six percent pure and

weighing about two pounds on the toilet lid. The tape had

broken and the contraband was exposed. An electronic scale lay

nearby.

Gallego and Echeverri were charged with possession of

cocaine with intent to distribute it, 21 U.S.C. 841(a)(1);

841(b)(1)(B), and with participating in a drug distribution

conspiracy. 21 U.S.C. 846. Gallego pled guilty and Echeverri

stood trial alone. Over his objection, the government introduced

the earnings statement into evidence. The court allowed agent

Ghio to testify that, in his opinion, the reverse side of the

statement comprised a drug ledger (the individual figures

corresponding to per-ounce prices for various cocaine sales in

the Rhode Island market). Ghio further testified that it was

common for cocaine dealers to keep their accounts in such

fashion; that the going price for cocaine was $35,000 to $40,000

per kilogram; that the total shown on the earnings statement, if

interpreted to mean "dollars" and added correctly,1 corresponded

1The column of figures, added correctly, totalled 37,000,
not 34,000. We consider this mathematical mishap unimportant.

3

in rough proportion to the gross sales price of the aggregate

cocaine on hand; and that the quantity of narcotics seized was

inconsistent with personal use.

The jury convicted Echeverri on both counts. This

appeal ensued.

II. SUFFICIENCY OF THE EVIDENCE

Appellant labors to convince us that the judgment below

rests on too fragile an evidentiary foundation. We are not

persuaded.

A. Standard of Review.

The standard of review applicable to sufficiency-of-

the-evidence challenges is settled. An appellate court must

examine the evidence in the light most flattering to the

prosecution, indulging all reasonable inferences in its favor and

then determining whether a rational jury could find guilt beyond

a reasonable doubt. See, e.g., Maraj, 947 F.2d at 522-23; United

States v. Boylan, 898 F.2d 230, 243 (1st Cir.), cert. denied, 111

S.Ct. 139 (1990). In making this determination, the court must

credit both direct and circumstantial evidence and it must do

so without evaluating the relative weight of different pieces of

proof or venturing credibility judgments. To uphold a

conviction, the court need not believe that no verdict other than

a guilty verdict could sensibly be reached, but must only satisfy

itself that the guilty verdict finds support in "a plausible

rendition of the record." United States v. Ortiz, 966 F.2d 707,

711 (1st Cir. 1992), petition for cert. filed (U.S. October 19,

4

1992) (No. 92-6552).

B. Possession with Intent to Distribute.

In challenging his conviction on the specific-offense

count, appellant questions whether the evidence is copious enough

to sustain a finding that he knowingly possessed cocaine. The

government, he says, proved no more than his "mere presence" at a

site where drugs were found.

The "mere presence" defense has become, at one and the

same time, both the last haven of the innocent and the last

refuge of the scoundrel. Although courts have found it

applicable in certain situations, United States v. Barnes, 890

F.2d 545, 549 (1st Cir. 1989) (collecting cases), cert. denied,

494 U.S. 1019 (1990), the mere presence defense is not so

ubiquitous as to envelop every drug-trafficking case in which the

government lacks direct evidence of a defendant's complicity.

The defendant's presence at a place where contraband is found may

or may not be purely coincidental. The attendant circumstances

tell the tale and the culpability of a defendant's presence

hinges upon whether the circumstances fairly imply participatory

involvement. In other words, a defendant's "mere presence"

argument will fail in situations where the "mere" is lacking.

This is such a situation. There is far more to the

prosecution's case against Echeverri than his corporeal presence

in the apartment. A rational jury, drawing reasonable inferences

from proven facts, could certainly have concluded that this was a

case of culpable presence as opposed to mere presence, see Ortiz,

5

966 F.2d at 712, and that appellant was in knowing possession of

the contraband at the time of the raid. We explain briefly.

Both constructive possession and guilty knowledge may

be inferred from a defendant's dominion and control over an area

where narcotics are found. See, e.g., Barnes, 890 F.2d at 549.

In this instance, there is considerable evidence of dominion and

control. Appellant concedes that the apartment was his abode.

His rent receipts, passport, and other personal effects were

strewn about the premises. As the lessee of the apartment, and

the one who called it home, appellant was hardly powerless to

determine who and what could come inside.2

Moreover, the entire apartment consisted of a small,

cramped space. The cocaine was in plain view, resting openly on

the dwelling's only toilet. Tools of the drug trade were

conspicuously displayed. Echeverri himself was physically

present, seated within four feet of the contraband. All in all,

the totality of the circumstances suffices to support both a

finding of constructive possession and a finding of guilty

knowledge. See, e.g., United States v. Gonzalez-Torres, F.2d

, [No. 91-2140, slip op. at 2-6]; Ortiz, 966 F.2d at 713-

14; United States v. Desmarais, 938 F.2d 347, 352 (1st Cir.

1991); United States v. Batista-Polanco, 927 F.2d 14, 19 (1st

Cir. 1991); Barnes, 890 F.2d at 549-51; see also United States v.

2The fact that appellant, as the sole rent payer and
resident of the dwelling, had the exclusive right to control the
comings and goings there is one of several important distinctions
between this case and United States v. Ocampo, 964 F.2d 80 (1st

Cir. 1992), much bruited by appellant.

6

Calle-Cardenas, 837 F.2d 30, 32 (1st Cir.) (where apartment in

which defendant was found contained his clothes and

identification cards, he had dominion and control over

apartment), cert. denied, 485 U.S. 1024 (1988); United States v.

Lochan, 674 F.2d 960, 965-66 (1st Cir. 1982) (defendant had

dominion and control over area behind back seat of automobile he

was driving and, therefore, over hashish stowed in that area).

The evidence was also ample to sustain a finding of

scienter. We have repeatedly held, and today reaffirm, that an

intent to distribute drugs can legitimately be inferred from

factors such as quantity and purity. See, e.g., United States v.

Ocampo-Guarin, 968 F.2d 1406, 1410 (1st Cir. 1992) (collecting

cases); Batista-Polanco, 927 F.2d at 18-19. Such factors prevail

here. Furthermore, agent Ghio's testimony adds strength to the

relevant evidentiary predicate.

We will not paint the lily. Because we require only

that a jury's verdict be supportable, not that it be inevitable,

see Boylan, 898 F.2d at 243, we must affirm appellant's

conviction for possession with intent to distribute.

C. Conspiracy.

Appellant's challenge to his conspiracy conviction

fares no better. To support a conspiracy conviction, the

prosecution must prove certain things not required under the

specific-offense count. It must show, inter alia, that an

agreement or working relationship existed, that it had an

unlawful purpose, and that the defendant was a voluntary

7

participant in it. See United States v. David, 940 F.2d 722, 735

(1st Cir. 1991), cert. denied, 112 S.Ct. 605, 908, 1298, 2301

(1992); United States v. Rivera-Santiago, 872 F.2d 1073, 1079

(1st Cir.), cert. denied, 492 U.S. 910 (1989). The agreement

itself "need not be express, but may consist of no more than a

tacit understanding." United States v. Glover, 814 F.2d 15, 16

(1st Cir. 1987) (citations and quotation marks omitted); accord

United States v. Paiva, 892 F.2d 148, 161 (1st Cir. 1989).

Moreover, the proof of a defendant's conspiratorial involvement

may consist of indirect evidence, including reasonable inferences

drawn from attendant circumstances. See, e.g., David, 940 F.2d

at 735; Glover, 814 F.2d at 16-17. In the last analysis,

criminal juries are not expected to ignore what is perfectly

obvious. See United States v. Ingraham, 832 F.2d 229, 240 (1st

Cir. 1987), cert. denied, 486 U.S. 1009 (1988).

In this case, there was evidence that, in a tiny

apartment, within feet of the sole tenant, law officers found a

commercially exploitable quantity of high-purity cocaine, a

measuring scale of the sort frequently used by narcotics dealers

to ply their trade, and a drug ledger (written on the back of the

tenant's pay stub). Exiting from the room where the cocaine lay

open and exposed was another man (Victor Gallego). A jury

viewing this evidence could reasonably conclude that the two men

had agreed to disobey the law and distribute cocaine. Cf., e.g.,

Ortiz, 966 F.2d at 712 (criminals "rarely seek to perpetrate

felonies before larger-than-necessary audiences"); Batista-

8

Polanco, 927 F.2d at 18-19 (similar); United States v. Cuevas-

Esquivel, 905 F.2d 510, 515 (1st Cir.) (similar), cert. denied,

111 S.Ct. 208 (1990).

III. OTHER ASSIGNMENTS OF ERROR

We consider appellant's assignments of mid-trial error

in the ensemble.

A. Authentication.

Appellant complains that the government failed to

authenticate the so-called drug ledger as required by Fed. R.

Evid. 901, and that, consequently, the district court erred in

admitting it into evidence.3 We review the trial court's

rulings concerning authentication of documents only for mistake

of law or abuse of discretion. See Ortiz, 966 F.2d at 716;

United States v. Ladd, 885 F.2d 954, 956 (1st Cir. 1989).

When the authenticity of a document is challenged, the

court must determine whether there is sufficient threshold proof

that the document is what its proponent claims it to be. See

3The rule provides in pertinent part:

The requirement of authentication or
identification as a condition precedent to
admissibility is satisfied by evidence
sufficient to support a finding that the
matter in question is what its proponent
claims.

Fed. R. Evid. 901 (a).

9

Ortiz, 966 F.2d at 716. The Federal Rules of Evidence adopt a

flexible approach to this question. Indeed, the applicable rule

suggests that the "[a]ppearance, contents, substance, internal

patterns, or other distinctive characteristics, taken in

conjunction with circumstances," can confirm a document's

authenticity. Fed. R. Evid. 901(b)(4).

In this instance, the government claimed that the

earnings statement doubled as a drug ledger. The district court

admitted the evidence on that basis. We discern no error. The

earnings statement was clearly identified with Echeverri it

was, after all, a recapitulation of his wages, reposing in his

apartment. Federal agents discovered the document lying on a

couch within feet of a sizable, easily visible package of

cocaine. The column of handwritten figures on the paper totalled

37,000 the approximate dollar value of the discovered cocaine

in the local market. Finally, an agent familiar with the drug

trade testified on voir dire that he believed the document was a

drug ledger and gave persuasive reasons in support of that

conclusion. No more was exigible.

To be sure, the government presented no direct proof

that Echeverri authored the jottings on the earnings statement.

But, such proof was not a prerequisite to admissibility in the

circumstances at bar. On the record before us, the government

sufficiently connected the document to the conspiracy and to the

appellant, even though it did not conclusively prove the author's

identity. Cf., e.g., United States v. Natale, 526 F.2d 1160,

10

1173 (2d Cir. 1975) (holding that, for authentication, "[p]roof

of the connection of an exhibit to the defendants may be made by

circumstantial, as well as direct, evidence"), cert. denied, 425

U.S. 950 (1976). Whether Echeverri, his coconspirator, or some

third person was the one who actually put pen to paper and wrote

down the figures is of no moment. Regardless, the evidence that

identified the document as a drug ledger was the key to the issue

of authentication. See United States v. Smith, 918 F.2d 1501,

1510 (11th Cir. 1990), cert. denied, 112 S.Ct. 151, 253 (1991);

United States v. Drougas, 748 F.2d 8, 26 (1st Cir. 1984).4

B. Expert Testimony.

Appellant also contends that the district court erred

in allowing agent Ghio to offer opinion evidence anent the drug

ledger. His contention is unavailing.

We have consistently recognized that academic training

is not a sine qua non of expert knowledge concerning the

4The cases cited by appellant in support of his challenge
are readily distinguishable. In both United States v. Mouzin,

785 F.2d 682 (9th Cir.), cert. denied, 479 U.S. 985 (1986) and

United States v. Ordonez, 737 F.2d 793 (9th Cir. 1983), the

government argued that intricately detailed writings were
properly admitted into evidence to prove the truth of the matter
asserted therein because the writings were coconspirators'
statements or statements of a party opponent. In this context,
the Ninth Circuit found error because there was no evidence of
actual authorship and, therefore, no foundation for the admission
of such statements. See Mouzin, 785 F.2d at 692; Ordonez, 737

F.2d at 800-02; see also Fed. R. Evid. 801(d)(2). In contrast,

there has been no suggestion in the instant case that the
document was admitted to prove the truth of the matter asserted
therein. Rather, the jottings on this sheet are more akin to
physical evidence of the crime than to potential hearsay
statements. See, e.g., United States v. Wilson, 532 F.2d 641,

645-46 (8th Cir.), cert. denied, 429 U.S. 846 (1976).

11

practices of hard-core drug traffickers. See, e.g., United

States v. Hoffman, 832 F.2d 1299, 1310 (1st Cir. 1987). Perhaps

realizing the durability of this tenet, appellant does not

question Ghio's qualifications to serve as an expert witness. He

does, however, question the need for expert testimony.

In deciding whether to admit or exclude opinion

evidence, courts must assess whether the testimony will likely

assist the jury in understanding the proof or ascertaining the

facts. See Fed. R. Evid. 702. Because of its first-hand

acquaintance with the case, the trial court enjoys broad leeway

in making this discretionary determination. The court of appeals

will overturn a

trial-level determination about the need for expert testimony

only if a manifest abuse of the trial court's discretion is in

prospect. See Ladd, 885 F.2d at 959; Hoffman, 832 F.2d at 1310.

Here, the central issue on count 2 was whether

appellant was or was not a knowing and intentional

participant in a cocaine conspiracy. Ghio's testimony was

clearly relevant to that issue. Moreover, the testimony was

undoubtedly helpful to the jury. Laymen, on average, are not

familiar with the praxis of the cocaine community. See Ladd, 885

F.2d at 960. It follows that a trial court may allow a qualified

expert to identify an otherwise inscrutable document as a drug

ledger and explain its contents. See, e.g., United States v.

Campino, 890 F.2d 588, 593 (2d Cir. 1989), cert. denied, 494 U.S.

12

1068, (1990); United States v. Diaz, 878 F.2d 608, 619 (2d Cir),

cert. denied, 493 U.S. 993 (1989); United States v. DeSoto, 885

F.2d 354, 362 (7th Cir. 1989); see also United States v. Rubio-

Estrada, 857 F.2d 845 (1st Cir. 1988) (noting approvingly, albeit

without considering the issue raised by this appellant, that the

jury had before it the expert testimony of a government witness

who identified and explained a drug ledger). The lower court

acted well within the encincture of its discretion in permitting

the use of such evidence here.5

IV. CONCLUSION

We need go no further. The government proved

Echeverri's guilt beyond a reasonable doubt in a trial free from

reversible

error. The judgment below is therefore

Affirmed.

5We note that the district court wisely instructed the
jurors that agent Ghio's opinion testimony, like opinion
testimony generally, was not binding upon them.

13