February 4, 1993
UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-1427
UNITED STATES,

Appellee,

v.

JOSE A. GARCIA,

Defendant, Appellant.

No. 92-1428
UNITED STATES,

Appellee,

v.

PABLO H. GARCIA,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ronald R. Lagueux, U.S. District Judge]

Before
Breyer, Chief Judge,

Bownes, Senior Circuit Judge,

and Selya, Circuit Judge.

John M. Cicilline, for defendant-appellant Jose A. Garcia.

Francis J. Gillan, III, for defendant-appellant Pablo H. Garcia.

Zechariah Chafee, Assistant United States Attorney, with whom

Lincoln C. Almond, United States Attorney, was on brief, for appellee.

BOWNES, Senior Circuit Judge. Defendants Pablo

Garcia and Jose Garcia (no relation) were tried jointly and

convicted by a jury in federal district court for possession

of cocaine with intent to distribute, in violation of Title

21 U.S.C. 841(a)(1), and conspiracy to possess cocaine with

intent to distribute, in violation of Title 21 U.S.C. 846.

On appeal, defendants-appellants both argue: (1) that the

evidence was insufficient to support the convictions; (2)

that the district judge erred in vacating the magistrate's

order compelling the attendance of the government's

confidential informant at a suppression hearing; and (3) that

the district judge erred in failing to suppress certain

evidence. In addition, defendant Pablo Garcia argues that

the district judge erred in admitting evidence of his prior

arrest pursuant to Fed. R. Evid. 404(b). We affirm.

I.

Background

On February 6, 1991, the Providence police executed

a search warrant for narcotics and related items in the

second floor apartment of a three-story tenement building at

93-95 Gallatin Street. The search warrant had been obtained

pursuant to information the police received to the effect

that drug trafficking was being conducted in the apartment.

The police had confirmed the information by conducting a

"controlled buy." In executing the warrant, the police

announced their presence, waited approximately ten seconds,

and receiving no response, proceeded forcibly to enter the

apartment. Upon their entry, the police found the two

defendants and a woman holding a child in the front room of

the apartment. The woman, Altagracia Lopez, shared the front

room of the apartment with Oscar Quinones, who was not

present at the time of the defendants' arrest.

Defendants were made to lie on the floor while the

police initiated a search of the apartment. INS Special

Agent Bernstein testified that he gave defendants Miranda

warnings in Spanish. In the closet of the back bedroom, the

police found approximately ten and one-half ounces (295

grams) of suspected cocaine in one of several opaque plastic

bags on the closet's floor. The substance later tested

positive as cocaine, and was valued between $13,650 and

$16,800. Also in the closet were articles of clothing and

scattered papers, including a bill of sale and a car

registration in the name of Pablo Garcia registered to the

address of 93-95 Gallatin Street. Under a mattress in the

front room, the police discovered a passport for Pablo Garcia

and a number of notebooks with figures and names that a DEA

agent testified were records of narcotics dealing. In the

box spring under the mattress, the police found $1,308 in

cash. Finally, on the kitchen counter, police discovered

plastic ziploc bags that had been cut, and a candle and a

-3-

strainer. At trial, DEA agents testified that these were

packaging materials for cocaine distribution.

The police took Pablo and Jose separately into the

room where the cocaine had been found, and asked each of them

to identify a piece of clothing that belonged to them. Pablo

picked out a shirt and jacket (later revealed to be a woman's

jacket). Jose picked out a shirt. Also in that room were

two mattresses, one of which was propped against the wall.

The closet in the back bedroom was the only closet in the

apartment.

Both defendants took the stand at trial and

testified in their own defense. While admitting that they

both slept in the room in which the cocaine was found, they

denied knowing that there was cocaine in the closet. Both

also denied knowing of the presence of the other drug

paraphernalia in the apartment or of any drug trafficking

operation.

Defendants presented different explanations for

their presence in the apartment. Jose Garcia testified that

he had lived in the back room at 93-95 Gallatin Street since

the previous August or September. He said that he had been

in Santo Domingo from December 23, 1990 until January 23,

1991, and that he had spent a few days in New York before

returning to Providence. He returned to find that Pablo

Garcia, whom he had never met, was staying in the room he

-4-

rented. He testified that he had been trying to move from

the apartment when the arrest took place, and that he already

had moved many of his belongings to a friend's home.

Pablo Garcia testified that he lived in New York,

but had come to Providence in February to stand trial for his

arrest, in December 1990, for cocaine trafficking. The

district judge had, before Pablo testified, admitted evidence

of this prior arrest as probative of defendant's knowledge

and intent to commit the offenses at issue. Pablo

acknowledged that he was a friend of Oscar Quinones, but

maintained that he did not know Jose Garcia, and that he had

no real control over the room or the apartment because he was

only temporarily residing there.

II.

Sufficiency of the Evidence

Defendants both appeal the denial of their

respective motions for judgment of acquittal.1 Both were

convicted of possessing and conspiring to possess cocaine

with the intent to distribute. Defendants assert that the

prosecution failed to prove, beyond a reasonable doubt, both

knowing possession of the cocaine and their participation in

a conspiracy to possess cocaine.

1 Pablo Garcia and Jose Garcia have each adopted, by
reference, the other's brief. See F.R.A.P. 28(i).

-5-

The standards governing a challenge to the

sufficiency of the evidence are familiar and oft-quoted:

The challenges to the sufficiency of the
evidence and to the denial of the motion
for judgments of acquittal raise a single
issue. We assess the sufficiency of the
evidence as a whole, including all
reasonable inferences, in the light most
favorable to the verdict, with a view to
whether a rational trier of fact could
have found the defendant guilty beyond a
reasonable doubt. We do not weigh
witness credibility, but resolve all
credibility issues in favor of the
verdict. The evidence may be entirely
circumstantial, and need not exclude
every reasonable hypothesis of innocence;
that is, the factfinder may decide among
reasonable interpretations of the
evidence.

United States v. Batista-Polanco, 927 F.2d 14, 17 (1st Cir.

1991) (citations omitted). See also United States v. Lopez,

944 F.2d 33, 39 (1st Cir. 1991).

A. Substantive Offense

The charge of possession with intent to distribute

cocaine requires, in the context of this case, proof beyond a

reasonable doubt that the cocaine found in the closet within

the room shared by defendants was knowingly and intentionally

possessed by them for purposes of distribution. See United

States v. Vargas, 945 F.2d 426, 428 (1st Cir. 1991).

"Possession may be actual or constructive, sole or joint."

United States v. Wight, 968 F.2d 1393, 1397 (1st Cir. 1992);

United States v. Vargas, 945 F.2d at 428. Constructive

-6-

possession is proved when a person "`knowingly has the power

and intention at a given time to exercise dominion and

control over an object, either directly or through others.'"

United States v. Ocampo-Guarin, 968 F.2d 1406, 1409-10 (1st

Cir. 1992) (quoting United States v. Lamare, 711 F.2d 3, 5

(1st Cir. 1983)). See also United States v. Vargas, 945 F.2d

at 428 (constructive possession found where defendant was

sole tenant and occupant of apartment immediately prior to

police raid); United States v. Barnes, 890 F.2d 545, 549-50

(1st Cir. 1989) (constructive possession found where

defendant leased apartment that was jointly occupied with

others), cert. denied, 494 U.S. 1019 (1990); United States v.

Calle-Cardenas, 837 F.2d 30, 32 (1st Cir.) (reasonable for

jury to find defendant exercised dominion and control over

area where contraband was found because three occupants were

dressed similarly and all three names appeared on door at the

time of the raid), cert. denied, 485 U.S. 1024 (1988). The

government may show constructive possession through the use

of either direct or circumstantial evidence. Mere presence

or association with another who possessed the contraband is,

however, insufficient to establish constructive possession.

United States v. Wight, 968 F.2d at 1397; United States v.

Batista-Polanco, 927 F.2d at 18.

This case is very similar to United States v.

Vargas, 945 F.2d 426, and the analysis flows accordingly. In

-7-

Vargas, a search warrant was executed at defendant's

apartment when defendant was playing cards in a kitchen with,

among others, an alleged co-conspirator. The search

uncovered: one kilogram of cocaine concealed behind a wooden

baseboard in a bedroom with the co-conspirator's passport;

drug ledgers on top of a bureau and $2,400 in a jacket pocket

in the only other bedroom, and a narcotics notebook in open

view in the kitchen. We affirmed both the possession and the

conspiracy charges.

On the possession charge, we held that there was

sufficient evidence from which the jury could have found that

defendant enjoyed either exclusive or joint dominion and

control of the apartment during the days preceding the police

raid. We found that there was ample circumstantial evidence

for a finding that the cocaine was intended for distribution:

from the quantity it was reasonable to infer that the cocaine

was not merely for personal consumption and such inference

was buttressed by the large amount of cash and the drug

records in open view. In language directly apposite to this

case, we concluded that, "it would be reasonable to infer

that no non-occupant, other than a confidant of the tenant,

would deposit a valuable cache of contraband in a bedroom of

an unsuspecting tenant's apartment from which retrieval would

be much more difficult at best, and the risk of discovery and

loss far greater, than if a more accessible and closely

-8-

controlled location were used or the secret were shared with

the tenant." United States v. Vargas, 945 F.2d at 429.

Similarly, the evidence in this case was sufficient to permit

a rational jury to find that both Pablo Garcia and Jose

Garcia constructively possessed the cocaine. They both

shared dominion and control over the area where the cocaine

was found. Both men admitted to living in the second floor

apartment and to jointly occupying the rear bedroom where the

cocaine was found; Jose exclusively for the prior five or six

months, and both Pablo and Jose for the week immediately

preceding the raid. At the time of the search, both told the

police that the apartment was where they lived. After the

search uncovered cocaine, both were separately taken into the

bedroom and asked to pick out an article of clothing that

belonged to them, which they did. Also found on the floor of

the closet along with the cocaine were various personal

papers belonging to Pablo, including car registration forms

registered to 93-95 Gallatin Street. In addition, Pablo's

passport, concealed along with a large amount of money and

records of drug sales, was also found during the search. As

we stated in Vargas, "[e]vidence sufficient to establish that

the accused shared dominion and control of the premises can

serve as a sufficient basis for inferring a knowing

possession of contraband where the evidence indicates that

the accused, either alone or jointly with one or more

-9-

persons, intended to facilitate the possession." United

States v. Vargas, 945 F.2d at 428.

There was also ample evidence from which the jury

could find that the cocaine discovered was intended for

distribution. The quantity of cocaine (295 grams), the large

amount of cash, the drug records, and cocaine paraphernalia

in plain view, were all links in a chain of evidence from

which intent to distribute cocaine could be found. See

United States v. Desmarais, 938 F.2d 347, 352 (1st Cir. 1991)

(intent to distribute reasonably inferable from possession of

controlled substance and related paraphernalia).

B. Conspiracy

"The gist of conspiracy is an agreement to disobey

or to disregard the law." United States v. Drougas, 748 F.2d

8, 15 (1st Cir. 1984). The government must prove both

"intent to agree and intent to commit the substantive

offense." Id. "Due to the clandestine nature of criminal

conspiracies, the law recognizes that the illegal agreement

may be either 'express or tacit' and that a `"common purpose

and plan may be inferred from a development and collocation

of circumstance." ' " United States v. Sanchez, 917 F.2d 607

(1st Cir. 1990) (citations omitted), cert. denied, U.S.

, 111 S.Ct. 1625, 113 L.Ed.2d 722 (1991). See also United

States v. Tejeda, 974 F.2d 210, 212 (1st Cir. 1992). Thus, a

conspiracy may be established through circumstantial

-10-

evidence, United States v. Ocampo, 964 F.2d 80, 82 (1st Cir.

1992), and to prove its case the government is required to

demonstrate only a tacit understanding between the

conspirators. United States v. Olivo-Infante, 938 F.2d 1406,

1410 (1st Cir. 1991). But mere presence at the scene of a

crime is insufficient to prove membership in a conspiracy.

United States v. Ocampo, 964 F.2d at 82 (citing United States

v. Francomano, 554 F.2d 483, 486 (1st Cir. 1987)).

The evidence viewed in the light most favorable to

the verdict, together with all reasonable inferences to be

drawn therefrom, permitted a rational jury to find both

defendants guilty beyond a reasonable doubt of conspiracy to

possess cocaine with the intent to distribute. See United

States v. Tejeda, 974 F.2d at 212.

III.

District Judge's Decision to Vacate

Order Compelling Attendance of

Confidential Informant at Hearing

Defendant Pablo Garcia argues that the district

court erred in vacating the magistrate-judge's order

compelling the attendance of the confidential informant at an

evidentiary hearing to be held by the district judge.2 The

magistrate first issued a pretrial order on June 11, 1991,

2 Although we treat this issue and the following issue
involving motions to suppress as arguments presented below
and on appeal by Pablo Garcia, we acknowledge that Jose
Garcia has adopted the arguments. See footnote 1.

-11-

which required that the government arrange communication

between the confidential informant and the defense "to the

extent that said person is willing to communicate." On July

9, defendant Pablo Garcia filed a motion with the magistrate

asking that the government be ordered to comply with the

pretrial order. On September 5, the magistrate issued a

second order stating, in pertinent part, that,

the person who bought cocaine at 95
Gallatin Street, 2nd Floor on behalf of
the police, be served by the United
States Marshal Service, through the
United States Attorney, with a copy of
this order to compel attendance of this
witness at a Motion to Suppress hearing
to be held by Judge Lagueux at a date,
time and place to be fixed and specified
by Judge Lagueux. Counsel for the
Defendant shall be allowed to meet with
such witness just prior to said hearing.

The government appealed this second motion to the district

court judge.3 The district judge held a hearing on the

government's appeal. He determined that the defendant failed

to make the preliminary showing as required by Franks v.

Delaware, 438 U.S. 154 (1978), in order for the court to

conduct an evidentiary hearing on the validity of the search

warrant. The judge explained that it appeared that the

magistrate's order assumed that the district judge was going

3 Local Rule 32(b)(2) provides in pertinent part that,
"[a]ny party may appeal from a magistrate's determination
made under this rule within 10 days after the issuance of the
magistrate's order."

-12-

to conduct a hearing, that the defense had failed to make a

proper case for the hearing, and that, absent a hearing,

there was no requirement that the informant appear. At a

later hearing on October 31, 1991, the judge refused to grant

defendant a subpoena ex parte, and delayed determination of

whether the informant could be subpoenaed until the

appropriate time at trial. Pablo Garcia never renewed his

motion for a subpoena at trial.

A magistrate's discovery order may be set aside

where the order is clearly erroneous or contrary to law.

Fischer v. McGowan, 585 F. Supp. 978, 984 (D.R.I. 1984);

Pascale v. G.D. Searle & Co., 90 F.R.D. 55, 59 (D.R.I. 1981);

28 U.S.C. 636 (b)(1)(A); Local Rule 32(b)(2). The district

judge determined that the magistrate's order was clearly

erroneous because it compelled the confidential informant to

attend a suppression hearing when the district judge had not

yet determined whether he would conduct such a hearing. We

find that the district court properly vacated the

magistrate's order.

IV.

The Suppression Motions

A. Probable Cause

Defendant Pablo Garcia challenges the district

court's denial of his motion to suppress evidence seized

during the search of the apartment on the ground that there

-13-

was no probable cause for the officers to execute the search.

In particular, he asserts that the affidavit underlying the

search warrant upon which the search team relied was

deficient. The search warrant was issued by a state court

judge for the state of Rhode Island upon the affidavit of

Detective Zammarelli. That affidavit, in essence, stated:

that Detective Zammarelli had reason to believe that a large-

scale drug operation was being conducted out of the second

floor apartment of 93-95 Gallatin Street; that he met with a

reliable confidential informant who told him that two

Hispanic persons were storing and selling drugs; that the

informant had seen large amounts of cocaine in the apartment;

and that, to corroborate this information, Detective

Zammarelli executed a "controlled buy" through the informant.

The affidavit fully described the "controlled buy."

Detective Zammarelli reported searching the informant prior

to the buy and finding no contraband on him. He stated that

he gave the informant a sum of U.S. currency, followed him to

the apartment, watched him enter the front door of 93-95

Gallatin Street, and observed him exit a few minutes later

from the same door. Next, he stated in the affidavit that

the informant then handed Detective Zammarelli a quantity of

cocaine, reporting that he had purchased the substance from

the Hispanic male who resided in the second floor apartment.

Detective Zammarelli stated that he made another search of

-14-

the informant and found no contraband. Later, upon testing

the substance, Detective Zammarelli confirmed that it was

cocaine.

The district court determined that there was

sufficient probable cause stated on the face of the

affidavit, finding that the information provided therein

would lead a reasonable person to believe that cocaine was

being sold from the second floor apartment.

We review the district court's decision to uphold

the warrant only for clear error. United States v. Nocella,

849 F.2d 33, 39 (1st Cir. 1988); United States v. Figueroa,

818 F.2d 1020, 1024 (1st Cir. 1987). In evaluating the

sufficiency of an affidavit, we afford great deference to a

magistrate's determination of probable cause. Illinois v.

Gates, 462 U.S. 213, 236 (1983) (citing Spinelli v. United

States, 393 U.S. 410, 419 (1969)).

The standard applied in determining the sufficiency

of an affidavit is a "totality of the circumstances" test.

Illinois v. Gates, 462 U.S. at 238. The affidavit is to be

interpreted in a common-sense rather than a hypothetical or

hypertechnical manner. See id.; United States v. Ventresca,

380 U.S. 102, 109 (1965); United States v. Cochrane, 896 F.2d

635, 637 (1st Cir.), cert. denied, 496 U.S. 929 (1990);

United States v. Calle-Cardenas, 837 F.2d at 31.

-15-

Defendant argues that the affidavit is inadequate

because the detective failed to establish the reliability of

the confidential informant. More generally, he argues that

this affidavit is the sort of "bare bones" affidavit that the

Supreme Court criticized in United States v. Leon, 468 U.S.

at 915. We disagree with both of these contentions.

Detective Zammarelli confirmed the information with

which the confidential informant provided him by carrying out

a carefully-executed "controlled buy." Given its greatest

force, defendant's argument against this corroboration was

that one and the same informant was the source of the

information and the actor in the "controlled buy," and that

the informant might have stashed cocaine elsewhere in the

building out of the sight of the detective. This

possibility, defendant posits, undercuts the reliability of

the informant. Although defendant's argument is possible, it

is not probable and strains credulity on a common-sense

reading. We find that both the issuing state court judge and

the district judge drew a reasonable inference of probable

cause that there was drug trafficking in the second floor

apartment of 93-95 Gallatin Street. We affirm the denial of

the motion to suppress the evidence seized pursuant to the

warrant.

B. Execution of Warrant

-16-

Pablo Garcia next challenges the denial of his

motion to suppress certain statements made and evidence

seized during the search of the apartment on the ground that

the execution of the search warrant was unlawful, resulting

in an unconstitutional search and seizure.

In reviewing a denial of a suppression motion, we

must uphold the district court's findings unless they are

clearly erroneous; the court's ultimate conclusion, however,

is subject to plenary review. United States v. Sanchez, 943

F.2d 110, 112 (1st Cir. 1991) (citations omitted). We will

uphold the denial of the motion to suppress if any reasonable

view of the evidence supports it. Id. (citing United States

v. Veillette, 778 F.2d 899, 902 (1st Cir. 1985), cert.

denied, 476 U.S. 1115 (1986)). See also United States v.

Cruz Jimenez, 894 F.2d 1, 7 (1st Cir. 1990) (district court's

choice between two competing interpretations of the evidence

cannot be clearly erroneous).

At the time of the execution of the search warrant,

defendants were watching television in the front room of the

apartment with co-tenant, Altagracia Lopez. Detectives Della

Ventura and Zammarelli were part of the search team at the

apartment's front door. Detective Della Ventura testified

that he knocked loudly on the door and shouted "Police,

search warrant, open the door." After waiting approximately

ten seconds without receiving a response (Detective

-17-

Zammarelli estimated ten to fifteen seconds), the search team

forcibly entered the apartment. Upon entering, defendants

were immediately restrained.

At the hearing, defendant Pablo Garcia sought to

suppress all evidence seized from the apartment on the basis

that the execution of the warrant was conducted in violation

of the "knock and announce" rule, 18 U.S.C. 31094, and

such violation rendered the subsequent search warrantless.

Pablo Garcia argued, alternatively, that no knock or

announcement was made at all; that the announcement was

inadequate when considering the purpose of the rule; or, if

the announcement was adequate, that the ten second wait

before forcibly entering was, as a matter of law, not long

enough.

After hearing the testimony of the two police

officers who executed the warrant and of Pablo Garcia, the

district judge found that the police did loudly knock and

announce their presence and purpose as required, and that

they entered the apartment when they believed that they had

been refused admission. The district judge was satisfied

4 18 U.S.C. 3109 states in pertinent part:
The officer may break open any outer or
inner door or window of a house, or any
part of a house, or anything therein, to
execute a search warrant, if, after
notice of his authority and purpose, he
is refused admittance or when necessary
to liberate himself or a person aiding
him in the execution of the warrant.

-18-

that, in the context of a drug raid where contraband can be

disposed of within seconds, the ten to fifteen second wait

was a reasonable period of time, and that the officers fully

complied with the "knock and announce" rule.

The district court's findings are not clearly

erroneous. Under the circumstances, a wait of ten seconds

after knocking combined with an announcement before forced

entry, was reasonable. The occupants of the apartment were

reasonably believed to possess cocaine, a substance that is

easily and quickly hidden or destroyed. See United States v.

One Parcel of Real Property, 873 F.2d 7, 9 (1st Cir.)

(shorter wait [five to ten seconds] before entry justified by

fact that officers had probable cause to believe occupants

possessed cocaine, a substance that is easily and quickly

removed down a toilet), cert. denied sub nom, Latreverse v.

United States, 493 U.S. 891 (1989).

C. Adequacy of Miranda Warnings

Finally with regard to the district court's denial

of his motions to suppress, defendant Pablo Garcia argues

that the law enforcement officials failed to adequately

apprise him of his rights in violation of Miranda v. Arizona,

384 U.S. 436 (1966).

Upon entering the apartment, the police restrained

the defendant and placed him face down on the floor. As the

search commenced, INS Special Agent Bernstein gave the

-19-

defendant Miranda warnings in Spanish. He specifically asked

defendant if he understood each right as it was read to him.

After each such question, the defendant responded

affirmatively. After advising defendant of his rights and

being told by the defendant that he understood them, Agent

Bernstein asked the defendant if he was willing to answer

some questions without the presence of an attorney.

Defendant agreed and told the officer he would answer

questions. Agent Bernstein then asked defendant basic

informational questions, such as where he lived. The answers

to some of the questions were incriminating.

After the discovery of the cocaine in the rear

bedroom, Agent Bernstein took the defendant, alone, into the

bedroom and asked him if any clothing belonged to him.

Defendant responded affirmatively. Agent Bernstein then

asked him to point out something that was his. Being

handcuffed, defendant motioned with his head to a shirt and a

jacket. Agent Bernstein identified the shirt and jacket and

asked defendant if they were his; defendant answered

affirmatively.5

At the suppression hearing, Pablo Garcia had sought

to suppress the incriminating statements and actions he made

during the search of the apartment on the ground that they

5 Special Agent Bernstein's treatment of Jose Garcia was
substantially the same, and the same analysis applies.

-20-

were made without an intelligent, knowing, and voluntary

waiver of his Fifth Amendment rights. Defendant argued that

the officer was required to specifically advise him that his

answers to the informational questions could be used against

him, and because he was never so advised, he could not have

knowingly waived his rights. In addition, defendant argued

that the warnings were inadequate because the officer should

have advised defendant that anything he did could be used

against him, and that defendant had a right to refuse to

point out such clothing that belonged to him.

When an individual is taken into custody and before

interrogation, Miranda requires that the individual be

advised: that he has the right to remain silent; that

anything he says may be used against him in court; that he

has the right to consult an attorney before being asked

questions; that the attorney may be present during

questioning; and that if he cannot afford an attorney, one

will be appointed for him if he wishes. Miranda v. Arizona,

384 U.S. at 444. Once the warnings delineated in Miranda are

given and acknowledged, all interrogation must cease if the

individual indicates in any manner, at any time prior to or

during questioning, that he wishes to remain silent, or that

he would like to seek the assistance of counsel. Id. at 444-

45.

-21-

After being advised of his Miranda rights, the

accused may validly waive his right to remain silent and his

right to counsel and respond to questions. See North

Carolina v. Butler, 441 U.S. 369, 372-76 (1979); United

States v.

Eaton, 890 F.2d 511, 513 (1st Cir. 1989), cert. denied, 495

U.S. 906 (1990). The determination of whether a valid waiver

of the right to counsel or right to remain silent was made

depends on whether the waiver was knowing and intelligent,

given the totality of the circumstances and the facts

surrounding the particular case, "`including the background,

experience, and conduct of the accused.'" United States v.

Butler, 441 U.S. at 374-75 (quoting Johnson v. Zerbst, 304

U.S. 458, 464 (1938)). See also Edwards v. Arizona, 451 U.S.

477, 482-83 (1981); United States v. Ferrer-Cruz, 899 F.2d

135, 141 (1st Cir. 1990) ("The basic governing legal rule is

that a court, in considering whether a defendant has

voluntarily relinquished his Fifth Amendment rights, must

examine the `totality of circumstances surrounding the

interrogation.'"). An express waiver is not required.

United States v. Butler, 441 U.S. at 373. What is required

is a clear showing of the intention, intelligently exercised,

to relinquish a known and understood right. Patterson v.

Illinois, 487 U.S. 285, 292 (1988); United States v. Porter,

764 F.2d 1, 7 (1st Cir. 1985), cert. denied, 481 U.S. 1048

-22-

(1987) (Miranda requires the officer to go further than just

asking accused if he understands his rights; the officer must

make sure that the accused, knowing his rights, voluntarily

relinquishes them).

At the suppression hearing, the district court

concluded that the defendant was properly advised of his

rights, understood them, and knowingly waived them. The

court found no compulsion in the questioning or request to

pick out an article of clothing. The court concluded that

defendant voluntarily and with full knowledge of his rights,

responded to the officer's request and effectively waived his

rights. The record supports the district court's finding.

We note that the incriminating statement which the defendant

sought to suppress was never elicited from the arresting

officer at trial.

-23-

V.

The Admission of Pablo Garcia's Prior Arrest

A. Background

This final issue is the most difficult one. It

involves the questions of whether, and, if so, how a

defendant can avoid the admission of prior bad acts by

stipulating that knowledge and intent are not contested. We

first rehearse in extenso what happened in the district

court.

Prior to trial, defendant Pablo Garcia requested a

ruling from the district court as to whether it would admit

evidence under Fed. R. Evid. 404(b)6 of his prior arrest for

dealing in cocaine. The court deferred ruling until the

evidence became relevant at trial.

At the start of the trial, but before the jurors

were in the courtroom, the attorney for Pablo Garcia (Francis

J. Gillan, III) requested that the government not be allowed

to mention the 404(b) evidence in its opening and that none

of the witnesses be allowed to testify as to defendant's

prior arrest until the court had ruled on the admissibility

6 Fed. R. Evid. 404(b) provides that:
Evidence of other crimes, wrongs, or acts
is not admissible to prove the character
of a person in order to show action in
conformity therewith. It may, however,
be admissible for other purposes, such as
proof of motive, opportunity, intent,
preparation, plan, knowledge, identity,
or absence of mistake or accident.

-24-

of the evidence. The prosecutor stated that he had no

intention of referring to the evidence in his opening and

that he would instruct his witness not to mention the

previous arrest. The court then stated that there would be a

hearing on the question in the absence of the jury at the

time the prosecutor wished to introduce the evidence.

Counsel for the defendant Jose Garcia (John M.

Cicilline), then informed the court that he might want to

elicit testimony as to the prior arrest of Pablo Garcia in

cross-examination of government witnesses. The court stated

that he would rule on the question at the appropriate time.

After the trial had progressed, Attorney Cicilline,

counsel for Jose Garcia, informed the court that he wanted to

elicit testimony about Pablo Garcia's prior arrest in cross-

examination of the next government witness, a DEA agent. The

court then held a hearing on the admissibility of the

evidence.

After hearing Attorney Cicilline on the question of

relevancy, the court heard argument by Attorney Gillan, Pablo

Garcia's attorney, as to why the evidence should not be

admitted. The prosecutor then advised the court that he was

not going to offer the evidence through the DEA agent, but

that he intended to offer testimony on Pablo Garcia's prior

arrest by a detective on the Providence Police Department.

The detective would testify that, within the last six months,

-25-

he had arrested Pablo Garcia on a cocaine charge after

personally witnessing the transaction in which Pablo Garcia

was involved.

During the course of the argument by Pablo Garcia's

attorney, the court commented:

Well, one of the requirements that
the government must prove is that there
was possession, number 1, and number two,
that it was was [sic] a knowing
possession. So, doesn't this evidence go
to question [sic] of whether the
possession was knowing?

After hearing further argument by Pablo Garcia's counsel the

court ruled:

Well, I think the rule is clear, as
has been explicated by the First Circuit
with the one exception that I referred
to, that this kind of evidence is
admissible as proof of motive, intent,
plan, knowledge, in this kind of a case
where there's a charge of possession with
intent to distribute, and also, a charge
of conspiracy. . . . It's admissible.
The prosecution can put it in. So, if
the prosecution doesn't choose to put it
in, one of the other defendants can bring
it out.

Prior to the introduction of the Rule 404(b)

testimony that the court had ruled would be admissible, Pablo

Garcia's attorney tried again to have it excluded. He

stated, inter alia:

Number 1, your Honor had said that
this evidence was important because it
would go to issue of intent to
distribute. A prior sale equals an
intent to distribute on this occasion.
With that in mind, your Honor, and

-26-

reading Rubio Estrada again last night,
where the Court had said that had
mentioned the facts [sic] that intent was
important. I would respectfully suggest
that if intent was at issue, based on the
testimony we heard from Detective Della
Ventura and thus far from Detective
Zammarelli, I wouldn't contest intent to
distribute, insofar as there is more than
ample evidence that whoever possessed
that cocaine, possessed it with the
intent to distribute. So, if the 404(b)
evidence goes to the intention of someone
to distribute that cocaine, I would
suggest, your Honor, that if the jury
finds beyond a reasonable doubt that
Pablo Garcia possessed, did in fact
possess that cocaine, then I would
stipulate that they can find from there,
that he did so with the intention to
distribute that cocaine.

After counsel's further argument on unfair

prejudice the following colloquy took place:

THE COURT: It may be. It may be.
And people in your position say it's
unfair prejudice. I say, it's fair
prejudice because it's fair evidence
against this defendant because he is
being charged with knowing possession,
and that's an issue in this case. He's
going to tell us, and you're going to
argue to the jury, that he just happened
to be there, wrong place at the wrong
time, doesn't know anything about cocaine
trafficking.

Mr. GILLAN: No, I don't say that
he doesn't know anything about cocaine
trafficking, just that he's not involved
in this enterprise.

THE COURT: Well, this evidence
indicates that he is.

MR. GILLAN: Thank you, your Honor.

-27-

THE COURT: And that's why it's
relevant, and that's why it's properly
admissible under the rule because there
is an issue of knowing possession . . .

Detective Zammarelli testified that, two months

prior to the arrest of Jose Garcia and Pablo Garcia, he and

Detective Della Ventura (also involved in the arrests of

Pablo and Jose) arrested Pablo Garcia in Providence at a

different location. Detective Zammarelli testified that he

observed, through a large glass window, three men engaged in

discussion. One of the men handed money to another, who

began to speak with the third man, Pablo Garcia. Pablo

Garcia then walked out of Detective Zammarelli's view, and

returned to hand a bag of suspected cocaine to the man from

whom he obtained money. Detective Zammarelli, along with

Detective Della Ventura, then arrested the three men. Pablo

Garcia was charged with unlawful delivery of cocaine and

conspiracy.

Immediately after this testimony, the court

instructed the jury:

. . . Mr. Foreman and members of the
jury, sometimes evidence is admissible
for one purpose, but it's not admissible
for another purpose. So, the Court has
to allow the evidence in because it's
relevant on some point in the case. But
I have to advise you, as jurors, that you
can't consider it on some other point in
the case.

The rule of evidence that's involved
is rule 404(b) which relates to other
crimes or wrongs, prior bad acts as it's

-28-

often referred to. Evidence of other
crimes, wrongs or acts is not admissible
to prove the character of a person in
order to show action in conformity
therewith. It may, however, be
admissible for other purposes such as
proof of motive, opportunity, intent,
preparation, plan, knowledge, identity,
or absence of mistake or accident.
That's the rule. What it means is that,
in a criminal trial for an offense you
can't bring in evidence of other
offenses, just to show that the defendant
is a bad person and is likely to have
committed this offense. That's not
admissible for that purpose. However, it
is admissible to show knowledge or intent
or motive or plan.

I have ruled that this evidence is
admissible in this case against Pablo
Garcia because two of the issues in the
case relate to his knowledge and his
intent. First of all, he has to have
knowing possession of the cocaine in this
case, and also, he is charged with not
only knowing possession but possession
with intent to distribute. And so, this
evidence relates to his knowledge about
cocaine and whether he knowingly
possessed it in that apartment on
Gallatin Street, and also, if he
possessed it, whether he possessed it
with intent to distribute.

So, you may consider this evidence
or prior acts by the defendant, Pablo
Garcia, only on the question of his
knowledge and intent in this case; and
the government has the burden of proving
those elements beyond a reasonable doubt.

This instruction was given in abridged form in the jury

charge. It is to be noted that the prosecutor did not

mention the prior arrest in his closing argument.

-29-

On appeal, defendant argues that the district court

erred in admitting the 404(b) evidence for two reasons.

First, defendant contends that it was impermissible evidence

of bad character and that it was unfairly prejudicial.

Second, defendant argues that the district court should have

accepted his attempt to foreclose admission of the evidence

by offering to concede the issues of intent and knowledge to

which the evidence was directed. We begin by addressing the

admissibility of the evidence.

B. Admissibility of the Evidence
B. Admissibility of the Evidence

Evidence of prior bad acts is admissible, pursuant

to Fed. R. Evid. 404(b), when it satisfies a two-part

inquiry by the trial court. The trial judge first determines

whether the evidence has some "special" probative value

showing intent, preparation, knowledge or absence of mistake.

See United States v. Flores Perez, 849 F.2d 1, 4 (1st Cir.

1988) (quoting from United States v. Scelzo, 810 F.2d 2, 4

(1st. Cir. 1987)); United States v. Moccia, 681 F.2d 61, 63

(1st Cir. 1982). This evidence must overcome the absolute

bar of Fed. R. Evid. 404(b), excluding evidence which

demonstrates only that the defendant has a bad character.

See United States v. Ferrer-Cruz, 899 F.2d 135, 137 (1st Cir.

1990); United States v. Rubio-Estrada, 857 F.2d 845, 846-47

(1st Cir. 1988). Next, the judge balances the probative

-30-

value of the evidence against the danger of unfair prejudice,

pursuant to Fed. R. Evid. 403.7 See United States v.

Ferrer-Cruz, 899 F.2d at 138; United States v. Rubio-Estrada,

857 F.2d at 847; United States v. Scelzo, 810 F.2d at 4;

United States v. Moccia, 681 F.2d at 63.

The admission of 404(b) evidence is committed to

the sound discretion of the trial judge. We will reverse on

appeal only for abuse of discretion. See United States v.

Flores Perez, 849 F.2d at 4. In Flores Perez, we observed

that where the 404(b) evidence is probative of issues like

intent and knowledge, the prohibition against admission of

character evidence is construed broadly. Id. In this case,

the district judge admitted the evidence of Pablo Garcia's

prior arrest for dealing cocaine as relevant to intent and

knowledge.

When he first ruled that the evidence was

admissible, the district judge relied on what he called a

clear rule in this circuit of admitting prior acts evidence

as proof of knowledge, intent, etc., in cases involving

possession and conspiracy. As we explained recently in

7 Fed. R. Evid. 403 provides that:
Although relevant, evidence may be
excluded if its probative value is
substantially outweighed by the danger of
unfair prejudice, confusion of the
issues, or misleading the jury, or by
considerations of undue delay, waste of
time, or needless presentation of
cumulative evidence.

-31-
31

United States v. Hadfield, 918 F.2d 987, 994 (1st Cir. 1990),

cert. denied, U.S. , 111 S. Ct. 2062, 114 L. Ed. 2d

466 (1991), we frequently have "upheld the admission of

evidence of prior narcotics involvement in drug trafficking

cases to prove knowledge and intent." See e.g., United

States v. Ferrer-Cruz, 899 F.2d at 138 (1st Cir. 1990)

(introduction of prior convictions of drug trafficking

admissible to prove defendant's knowledge that bags found in

car contained cocaine); United States v. Rubio-Estrada, 857

F.2d at 850 (introduction of prior drug trafficking

conviction admissible to prove knowledge where defendant

claimed he did not know that cocaine was in his house);

United States v. Molinares Charris, 822 F.2d 1213, 1220 (1st

Cir. 1987) (prior involvement with drug smuggling tended to

refute claim of mere presence on boat carrying drugs), cert.

denied sub nom, Pimienta-Redondo v. United States, 493 U.S.

890 (1989).

In this case, there is a close nexus between the

past act and the current charges. Pablo Garcia was arrested

only two months earlier by two of the same officers who made

the arrest precipitating the current charges. The previous

arrest was for dealing in cocaine, an act which is similar

and has special relevance to the charge of possession with

intent to distribute cocaine. We find that the trial judge

was correct in concluding that Pablo Garcia's prior arrest

-32-
32

for dealing in cocaine could provide the basis for reasonable

inferences going to defendant's knowledge and intent that

were not based solely on bad character. Cf. United States v.

Francesco, 725 F.2d 817, 822 (1st Cir. 1984) (prior

conviction for selling cocaine admissible to show knowledge

and intent to possess and distribute cocaine).

We also find that the prior arrest was admissible

because its probative value was not substantially outweighed

by the danger of unfair prejudice. See Fed. R. Evid. 403.

We afford "considerable leeway" to a district court in its

Rule 403 balancing, United States v. Simon, 842 F.2d at 555,

and we will reverse a district court's balancing only in

"exceptional circumstances." United States v. Garcia-Rosa,

876 F.2d 209, 221 (1st Cir 1989), cert. denied sub nom,

Alvarez v. United States, 493 U.S. 1030 (1990). This case

does not present any such exceptional circumstances.

We note that the evidence involved an arrest,

rather than a conviction, and involved two of the same

officers who participated in the arrest leading to the

charges at issue. These circumstances might well have

exaggerated the prejudicial effects of the evidence, a factor

not explicitly addressed by the district court.

Nevertheless, Rule 404(b) covers prior acts, and is not

limited to convictions. From our review of the record, we

are satisfied that there was sufficient evidence linking the

-33-
33

defendant to the prior act. Moreover, the fact that Pablo

Garcia was only arrested, and had not been convicted, was

explained to the jury.

Lastly, the district court handled the prior acts

evidence with care, providing the jury with a limiting

instruction after the evidence was admitted, and again

instructing the jury of the scope of prior acts evidence in

his final charge.

C. Defendant's Offers to Concede Knowledge and Intent

Having found the prior acts evidence admissible, we

now address defendant's argument that, because he had

conceded the elements of knowledge and intent to which the

evidence was directed, the evidence should not have been

admitted. In support of his claim, defendant points to two

statements made by defense counsel prior to the admission of

the evidence. With respect to the issue of knowledge,

defendant highlights an unelaborated statement made in

response to the court's discussion of the prejudicial impact

of the evidence that, "No, I don't say that he doesn't know

anything about cocaine trafficking. . . ." With respect to

the issue of intent, defendant points to his counsel's offer

to stipulate to the intent to distribute in the event the

jury found that Pablo Garcia, in fact, possessed the cocaine.

(We excerpted the context surrounding these statements in our

discussion of the background on this issue, supra.) The

-34-
34

combination of these two statements, defendant argues,

constituted a clear offer to concede that he had the

requisite knowledge and intent to possess the cocaine, and

the specific intent to distribute it, if the government

proved that he possessed it. For the reasons that follow, we

find that the defendant failed sufficiently to remove

knowledge and intent from the case, and that the trial judge

did not err in admitting the evidence despite the defendant's

stated concessions.

Defendant relies upon our decision in United States

v. Ferrer-Cruz, 899 F.2d at 139, in which we examined a

similar claim "in light of" the Second Circuit's decision in

United States v. Figueroa, 618 F.2d 934 (2d Cir. 1980).

Figueroa held that a defendant may remove issues of knowledge

and intent from a case by telling the court that he will not

dispute those issues:

provided that he expresses himself to the

court with sufficient clarity to justify

the court in (a) disallowing any
`subsequent cross-examination or jury
argument that seeks to raise' those
issues, and (b) `charging the jury that
if they find all other elements beyond a
reasonable doubt, they can resolve the
issue against the defendant because it is
not disputed.'

United States v. Ferrer-Cruz, 899 F.2d at 139 (quoting from

United States v. Figueroa, 618 F.2d at 942). The court in

Figueroa explained that a formal stipulation was not

required. Id. The offer, however, must be unequivocal. Id.

-35-
35

See also United States v. Colon, 880 F.2d 650, 659 (2d Cir.

1989); United States v. Mohel, 604 F.2d 748, 754 (2d Cir.

1979).

In Figueroa the court found ample evidence in the

record that the defense counsel had spoken with clarity, and

had removed, not merely certain inferences that might be

drawn as to the defendant's intent, but the entire issue of

intent. Counsel had addressed each of the court's concerns

and had stated "unequivocally," "'[t]here is no issue of

intent.'" United States v. Figueroa, 618 F.2d at 940. By

contrast, in Ferrer-Cruz, we determined that defense

counsel's response to the judge that he was not arguing mere

presence did not amount to a clear offer to stipulate.

United States v. Ferrer-Cruz, 899 F.2d at 139. In addition,

we found that, far from having removed the issue from the

case, the defense counsel had actually argued mere presence.

Id.

To prevent the admission of bad acts evidence, a

defendant's offer to concede knowledge and/or intent issues

must do two things. First, the offer must express a clear

and unequivocal intention to remove the issues such that, in

effect if not in form, it constitutes an offer to stipulate.

Second, notwithstanding the sincerity of the defendant's

offer, the concession must cover the necessary substantive

ground to remove the issues from the case. See generally,

-36-
36

United States v. Colon, 880 F.2d at 658 (where the court

determined that the stipulation the defendant presented, even

if proffered with sincerity, failed to remove the issue of

intent from the case).

We begin our analysis by noting that it was not

only the government which requested the admission of Pablo

Garcia's prior arrest, but defendant Jose Garcia, as well.

The two statements of concession raise somewhat different

concerns, and we address each in turn.

We do not believe that the defense counsel's

statement as to Pablo Garcia's knowledge of drug trafficking

amounted to an attempt to stipulate, nor do we believe that

it removed knowledge from the case. First, the statement did

not rise to the level of a clear offer to concede knowledge.

It was no more than a single response, among others, in an

ongoing discussion with the court about the prejudicial

impact of the evidence. By contrast with the successful

defendants in both Figueroa and Mohel, defense counsel did

not pursue this concession with the court at that time, nor

did he raise it again. See United States v. Figueroa, 618

F.2d at 940 (where defense counsel vigorously pursued his

concessions with the court); United States v. Mohel, 604 F.2d

at 752 (where defense counsel repeatedly offered to

stipulate). At best, defense counsel's statement may be

construed as an offer not to argue that defendant had no

-37-
37

knowledge of the workings of drug trafficking. In Ferrer-

Cruz, we observed that defense counsel's comments suggesting

that the defendant would not argue an issue (mere presence)

were "quite different from saying that the judge may instruct

the jury that, should it find such presence, the defense

w[ould] not dispute the 'knowledge' or 'intent' needed to

support the conviction." United States v. Ferrer-Cruz, 899

F.2d at 139.8

Second, defense counsel's statement of Pablo

Garcia's relative knowledge about cocaine trafficking was not

the sort of concession which the trial judge reasonably could

be expected to assume would remove the entire issue of

knowledge from this case. At most, it was a limited offer to

8 Courts which permit the foreclosure of 404(b) evidence by
concession or stipulation generally require that the
defendant be willing to accept a jury charge to the effect
that the issue has been removed from the case. See e.g.,

United States v. Colon, 880 F.2d at 659; United States v.

Figueroa, 618 F.2d at 942. Exactly who has the duty, the

defense counsel or the court, to suggest such an instruction,
however, remains unclear. Figueroa seems to suggest that, so

long as the defendant raises the issue with sufficient
clarity, the judge must then remove the issue from the case,
by disallowing subsequent cross-examination, and by a jury
charge. See United States v. Figueroa, 618 F.2d at 942. Our

decision in Ferrer-Cruz places the burden more clearly on the

defendant, as evident in the above-cited excerpt. In this
case, we do not need to reach the issue because we find that
defendant's statement was not a clear offer to remove
knowledge from the case. We merely instruct that an offer to
concede an issue which also asks for a jury charge will
appear more sincere and unequivocal, and will assist both
trial and reviewing courts in assessing such concession.

-38-
38

foreclose certain inferences that the jury might have drawn

as to knowledge.

Finally, knowledge remained a focal issue in the

case, and one vigorously contested by the defendant. Pablo

Garcia's defense was that he did not know of the presence of

the cocaine in the closet of the room he inhabited. Pablo

Garcia also argued that he did not know of the presence of

the drug paraphernalia that was openly visible in the small

apartment.

We turn next to defense counsel's offer to

stipulate to intent to distribute. By contrast with defense

counsel's statement as to knowledge, this statement

constituted a clear and unequivocal offer to stipulate to one

essential element of the case: the specific intent to

distribute. Conceding the specific intent to distribute did

not, however, affect the relevance of the evidence to show

defendant's knowledge and intent to possess the cocaine.

Defense counsel conceded intent to distribute if the jury

found possession. Because there remained an independent

basis for admission of the

evidence--the defendant's knowledge and intent to possess

the cocaine--the district court did not err in its failure to

consider the defendant's offer to stipulate in this instance.

-39-
39

The effect of stipulations on the admission of

404(b) evidence is confronting us more frequently. We,

therefore, proffer some guidance in this area. We note,

first of all, that a serious offer to concede or stipulate to

issues of intent and/or knowledge should be explored by the

district court. In the final analysis, however, whether such

an offer is accepted remains in the sound discretion of the

district judge. If the judge determines that the offer is

acceptable, the judge should take steps to assure that the

defendant is aware of the contents of the stipulation and of

its implications before directing the jury that it may

resolve the issue against the defendant.

Second, from a survey of the circuits on

stipulations in the area of 404(b) evidence, we have

ascertained a preference for handling the matter before

trial, or early in the trial process. See e.g., United

States v. Cardenas, 895 F.2d 1338, 1342 (11th Cir.

1990)(noting that the defendant did nothing before trial to

alert the government that it would not need to prove intent);

United States v. Manner, 887 F.2d 317, 322 (D.C. Cir. 1989)

(relying in part on the fact that the defendant "had not

offered explicitly in any pretrial hearings or motions to

stipulate or concede the intent issue"), cert. denied, 493

U.S. 1062 (1990); United States v. Franklin, 704 F.2d 1183,

1188 (10th Cir.) (noting the absence of any enforceable

-40-
40

pretrial assurance that the issue would not be contested),

cert. denied, 464 U.S. 845 (1983). Cf. United States v.

Miller, 974 F.2d 953, 960 (8th Cir. 1992) (declining to

overturn the district court on the basis of "defendant's

ambiguous, last minute suggestion" to enter into an agreement

with the government on intent). Although we are mindful of

the importance of some flexibility in this area, we favor

the practice of handling stipulations either pretrial, which

is preferable, or shortly after the trial has begun for the

sake of clarity both at trial and on review.

Affirmed.
Affirmed.

-41-
41