March 11, 1993
 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT
 

No. 91-1286

 UNITED STATES,

 Appellee,

 v.

 VICTOR MANUEL ALVAREZ,

 Defendant, Appellant.

 

No. 91-1287

 UNITED STATES,

 Appellee,

 v.

 DIANA MATOS,

 Defendant, Appellant.

 

 APPEALS FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF PUERTO RICO

 [Hon. Carmen C. Cerezo, U.S. District Judge]
 

 

 Before

 Torruella, Circuit Judge,
 
 Campbell, Senior Circuit Judge,
 
 and Skinner,* Senior District Judge.
 

 

Rachel Brill, Assistant Federal Public Defender, with whom
 
Benicio Sanchez Rivera, Federal Public Defender, was on brief for
 
appellant Victor Manuel Alvarez.
Joseph C. Laws, Jr., by Appointment of the Court, for appellant
 
Diana Matos.
Ivan Dominguez, Assistant United States Attorney, with whom
 
Daniel F. Lopez Romo, United States Attorney, and Jose A. Quiles-
 
Espinosa, Senior Litigation Counsel, were on brief for appellee United
 
States.

 

 March 11, 1993
 

 

*Of the District of Massachusetts, sitting by designation.

SKINNER, District Judge. 
 

 Appellants Victor M. Alvarez and Diana Matos, common

law husband and wife, were convicted by a jury in the

District of Puerto Rico for aiding and abetting several drug

offenses.1 Miguel Flores, though not a party to this

appeal nor convicted in the same trial, played a central

role in the alleged cocaine trafficking scheme and pleaded

guilty to the identical charges. Appellants defended

against the charges alleging that they were unwitting

participants in defendant Flores' cocaine trafficking

scheme. Flores offered testimony to the same end. Each

appellant advances numerous grounds for reversal. 

 Appellant Alvarez appeals his convictions alleging

that the district court (1) erroneously refused to accept

defendant Flores' guilty plea prior to the trial of Alvarez

and Matos, (2) improperly prohibited Flores from testifying

that his testimony exposed him to criminal penalties for

cocaine trafficking, and (3) errored in denying appellant's

 

1 Alvarez and Matos were convicted for the possession of
cocaine with intent to distribute in violation of 18 U.S.C.
 2 and 21 U.S.C. 841(a)(1); the importation of cocaine
into the customs territory of the United States in violation
of 18 U.S.C. 2 and 21 U.S.C. 952(a); and the failure to
declare cocaine in the cargo manifest or supply list of the
aircraft which brought them into the customs territory of
the United States in violation of 18 U.S.C. 2 and 21
U.S.C. 955. 

 -3-
 3

motion for judgment of acquittal. We affirm with respect to

Alvarez.

 Appellant Matos joins the arguments of Alvarez and

further appeals her convictions, alleging that the district

court failed to exclude government evidence that was

produced in violation of Rule 16, Federal Rules of Criminal

Procedure. As to Matos, we reverse and remand to the

district court for a new trial.

I. Evidence
 

 We recite the evidence in the light most favorable

to the prosecution. United States v. Campbell, 874 F.2d
 

838, 839 (1st Cir. 1989). The evidence showed that on

December 8, 1989, Victor M. Alvarez, Diana Matos, and Miguel

A. Flores arrived at the Luis Munoz Marin International

Airport, San Juan, Puerto Rico, on American Airlines flight

904 from Caracas, Venezuela. A U.S. Customs Inspector,

Francis Aponte, noticed that the three individuals appeared

to be nervous and were talking secretively among themselves.

Inspector Aponte approached the individuals, made routine

inquiries of them, and referred the group to the secondary

inspection station (a table used to examine the contents of

a passenger's luggage). At that time, appellant Alvarez was

 -4-
 4

permitted to leave the customs enclosure to purchase

airplane tickets to New York for each member of the group.

Inspector Aponte testified on cross-examination that he had

not made any written record of the group's suspicious

behavior even though such information would have been an

important part of the case report. 

 Carlos Ortiz, also a U.S. Customs Inspector,

testified that he noticed two individuals, later identified

as Flores and Matos, pushing two carts stacked with luggage

and that he motioned for them to approach his secondary

station. Inspector Ortiz requested Matos' and Flores'

customs declaration cards, noting that both cards appeared

to have been filled out by the same person. Matos

complained that the airline had broken a bottle of liquor

that she packed in her suitcase. During his search of the

luggage, Ortiz noticed that the luggage contained both men's

and women's clothing and he discovered a heavy, newspaper

wrapped package. Ortiz unwrapped the package to find an

aged painting of a young girl in a wooden frame. Ortiz

asked Matos if she had purchased the picture on her trip, to

which she answered "yes." 

 Inspector Ortiz consulted with a senior inspector,

took the picture to a search room, and drilled into the

 -5-
 5

picture frame using a small drill bit. Ortiz discovered a

white powdery substance inside the wooden frame, which a

field test indicated was cocaine. Matos and Flores were

arrested and searched. Customs inspectors then located

Alvarez in the airport's main concourse and placed him under

arrest. Inspectors conducted a thorough search of the

group's luggage, finding two additional paintings that

concealed cocaine and discovering false bottoms in each of

the six suitcases that also concealed cocaine. Customs

agents determined that the group carried more than ten

kilograms of cocaine.

 A grand jury returned a three count indictment on

January 3, 1990, against Matos, Alvarez, and Flores. Each

defendant pleaded not guilty. On October 2, 1990, Flores

filed a notice to plead guilty on one count of the

indictment. It appears, however, that Flores intended to

plead guilty on all three counts, and on October 5, 1990, he

amended his petition accordingly. On October 5, 1990, the

district court extensively questioned Flores before

declining to accept his plea. Flores asserted that Alvarez

and Matos had been unaware of any plan to import cocaine and

that he, himself, was solely responsible for the crime. The

judge suspended the proceeding because she was unsure

 -6-
 6

whether Flores could plead guilty to aiding and abetting a

crime while simultaneously proclaiming the innocence of the

other alleged participants.

 On October 9, 1990, the Flores plea hearing resumed.

The judge explained that Flores' refusal to acknowledge the

aiding and abetting modality did not preclude his guilty

plea. The court then engaged in an extensive colloquy with

defendant Flores in accordance with Rule 11 of the Fed. R.

Crim. P. The judge noted that Flores had proclaimed the

innocence of Alvarez and Matos in a confidential letter that

Flores had written to the judge from prison. Flores

confirmed sending the letter and explained that appellants

were friends of his from New York, the home of all the

parties. Flores had invited appellants to join him on a

cruise from San Juan to several caribbean islands, including

a stop in Caracas, Venezuela. While on the cruise, Flores

met a man who offered him three thousand dollars to bring

several pictures from Venezuela to Puerto Rico. Flores

agreed to meet the man at a hotel in Caracas and to carry

the pictures into Puerto Rico as a passenger on a commercial

airline. Flores did not tell Alvarez or Matos of his

scheme. 

 -7-
 7

 Flores, Alvarez, and Matos left the ship while it

was in port in Caracas to visit the beach. Flores claimed

to have tricked the appellants into missing the ship's

scheduled departure because he did not want to fly to Puerto

Rico alone. After missing the ship, Flores took Alvarez and

Matos to the predesignated hotel, checked the group into two

rooms, secretly picked up the pictures, and borrowed several

pieces of luggage from the man after explaining that the

group had left their bags on the cruise ship. Flores

arranged to meet the man in Puerto Rico at which time Flores

would deliver the pictures and return the borrowed luggage.

Flores claimed that he never saw the cocaine or even knew

for certain that he was carrying cocaine,2 but "imagined"

that the frames concealed cocaine because "nobody is going

to pay you three thousand dollars just to bring in three

pictures." Flores also denied knowing that the borrowed

suitcases concealed cocaine. Flores explained that Alvarez,

Matos, and he purchased new cloths in Caracas and spent

several days in the hotel before returning to Puerto Rico.

Flores packed the three pictures in separate bags and

 

2 Flores explained to the judge, "At no time did [the man]
tell me it was cocaine. He told me, `I want you to take
these pictures for me. Take them there.' He says, `it
doesn't contain anything dangerous.'"

 -8-
 8

covered them with cloths. Flores maintained that appellants

were totally unaware of his trafficking scheme during the

entire trip.

 The district court declined Flores' plea, stating: 

 Now, you have stated that you did not know what was
 in the picture frames, you did not know what was in
 any of the luggage that you carried. That in itself
 carries with it a defense that you could present to
 the jury. So I am not convinced that you have made
 a plea of guilty that I could accept that has a
 basis in fact that contains all elements of the
 offenses charged which is a requirement for the
 court to accept your plea of guilty. Among those
 elements, those of knowledge and intent.

Flores then moved to sever his trial from that of the

appellants. Finding that it would be impossible to mount an

adequate defense if Flores testified in favor of Alvarez and

Matos, the district court granted both the motion to sever

Flores' trial and Flores' request to be tried after

appellants.

 At trial, Matos called Flores as a witness who

offered essentially the same testimony as given to the judge

during his attempted plea. During examination by Alvarez,

Flores was permitted to testify that it was a crime to bring

cocaine into the United States, but he was not permitted to

testify as to the punishment that could be imposed for his

crime or as to his aborted plea attempt. The jury found

Matos and Alvarez guilty on all charges.

 -9-
 9

 One week later, Flores again came before the

district court to offer his guilty plea, but this time he

admitted that he knew cocaine was concealed within the

picture frames. The court accepted his plea.

II. Alvarez's Conviction
 

 Appellant Alvarez attacks his conviction on three

fronts. First, Alvarez alleges that his defense was

prejudiced because the district court erroneously failed to

accept defendant Flores' guilty plea prior to the trial of

Alvarez and Matos. Alvarez claims the judge relied on

"perceived technical deficiencies" with Flores' plea, rather

than crediting the weight of Flores' testimony that

indicated he accepted full responsibility for the crime.

This error, Alvarez argues, prejudiced his defense because

he was deprived of the opportunity to put Flores' guilty

plea before the jury as persuasive evidence of Mr. Flores'

credibility and sincerity. 

 We are unpersuaded by appellant's argument. A

criminal defendant has no constitutional right to plead

guilty. North Carolina v. Alford, 400 U.S. 25, 38 n.11
 

(1970) (a trial judge need not "accept every

 -10-
 10

constitutionally valid guilty plea merely because a

defendant wishes so to plead"). Nor does Rule 11 of the

Federal Rules of Criminal Procedure create such a right.

United States v. Bednarski, 445 F.2d 364, 365-66 (1st Cir.
 

1971). Here, the district court conducted a prolonged

hearing to determine the sufficiency of Flores' plea and

carefully considered his testimony. While Alvarez might

reach a different conclusion than the judge as to the

factual sufficiency of Flores' attempted plea, we find no

error in district court's determination. 

 Second, Alvarez alleges that the district court

violated both the Compulsory Process and the Confrontation

Clauses of the Sixth Amendment by improperly limiting the

scope of Flores' testimony and, thereby, depriving the

defendants of forceful evidence of Flores' sincerity and

credibility. On direct examination, Matos asked Flores,

"You have testified under oath regarding the exceptance

[sic] of a criminal offense. Are you aware of the

punishment that could be imposed for this crime?"

 The district court sustained the government's

objection to the question, reasoning that Flores had not

actually pleaded guilty and that he might or might not be

found guilty at a later trial. Moreover, Flores' testimony

 -11-
 11

would not necessarily be admissible against him in his own

trial unless he chose to testify in his own defense. The

judge did, however, allow Matos to ask Flores if he had

previously asserted the appellants' innocence. 

 Alvarez then conducted what he termed a "cross-

examination" of Flores -- a characterization rejected by the

trial court. The government argued that even though Flores

was not a joint witness of the appellants, cross-examination

was unavailable because Flores was clearly testifying in

Alvarez's favor. Though we are inclined to agree with the

trial court, we need not decide the issue because Alvarez's

Sixth Amendment objection fails regardless of how the

examination is characterized. Flores was permitted to

testify on "cross-examination" that he knew it was a crime

to bring cocaine into the United States and that he had

"wanted to talk about [his story] for some time."

 The Confrontation Clause of the Sixth Amendment

provides that "[i]n all criminal prosecutions, the accused

shall enjoy the right . . . to be confronted with the

witnesses against him." Cross-examination, the primary

interest secured by the Confrontation Clause, is "the

principal means by which the believability of a witness and

the truth of his testimony are tested." Kentucky v.
 

 -12-
 12

Stincer, 482 U.S. 730, 736 (1987) (quoting Davis v. Alaska,
 

415 U.S. 308, 316 (1974)). The Confrontation Clause

"mandates a `minimum threshold of inquiry' be afforded a

defendant in the cross-examination of adverse witnesses,"

Brown v. Powell, 975 F.2d 1, 5 (1st Cir. 1992) (quoting
 

United States v. Jarabek, 726 F.2d 889, 902 (1st Cir.
 

1984)), cert. dismissed, 122 L. Ed. 2d 179 (1993), but the
 

right to cross-examination is, of course, not absolute.

Trial judges retain broad discretion to impose reasonable

limits on the scope of cross-examination. Delaware v. Van
 

Arsdall, 475 U.S. 673, 679 (1986). On appeal, we review to
 

determine:

 whether the jury had sufficient other information
 before it, without the excluded evidence, to make a
 discriminating appraisal of the possible biases and
 motivations of the witnesses.

Brown, 975 F.2d at 5 (quoting United States v. Tracey, 675
 

F.2d 433, 437 (1st Cir. 1982)). The issue here is whether

the district court abused its discretion and committed a

reversible error when it prevented the jury from learning of

the exact penalties that Flores would face if convicted of

cocaine trafficking. We conclude the court committed no

error.

 Flores was allowed to put his entire story before

the jury, including important information that supported his

 -13-
 13

credibility. The jury heard Flores testify that importing

cocaine into the U.S. is a crime. We are confident that the

jury knew that a conviction for importing a large quantity

of cocaine carries a serious punishment. Though the jury

did not learn of the precise penalty imposed for drug

trafficking or that Flores had attempted to plead guilty,

the decision to exclude this evidence was within the

district court's discretion. The judge could properly

conclude that such testimony might mislead or confuse the

jury; particularly where, as here, the witness sought to

testify to the same penalties faced by the defendants. 

 We note that Sixth Amendment right of cross-

examination is directed at uncovering witness bias and

untruthfulness. In this case, however, Alvarez sought to

use "cross-examination" to bolster the witness' credibility.

Contrary to appellant's assertion, exposing a witness' bias

to lie can, indeed, be more important than exploring a

witness' motivation for telling the truth. Cf. Fed. R.
 

Evid. 608 (evidence of truthful character is admissible only

after the character of the witness for truthfulness has been

attacked); Fed. R. Evid 801 (prior consistent statements

generally admissible only to rebut an express or implied

 -14-
 14

charge of recent fabrication or improper influence or

motivation).

 Alvarez also asserts that the district court

violated the Compulsory Process Clause of the Sixth

Amendment. According to Alvarez, the district court

interfered with his constitutional right to present

witnesses in his own defense when it excluded an important

portion of Flores' testimony that weighed in favor of

Flores' credibility. The Compulsory Process Clause

guarantees every criminal defendant "the right . . . to have

compulsory process for obtaining witnesses in his favor . .

." This fundamental right, however, is not absolute.

Campbell, 874 F.2d at 851; Chappee v. Vose, 843 F.2d 25, 28
 

(1st Cir. 1988). The Supreme Court has explained, "The

Sixth Amendment does not confer the right to present

testimony free from the legitimate demands of the

adversarial system . . ." United States v. Nobles, 422 U.S.
 

225, 241 (1975). As explained more fully above, we conclude

that the district court acted properly to limit Flores'

testimony which might have mislead or confused the jury. 

 Third, Alvarez complains that the district court

errored in denying his Rule 29 motion for judgment of

 -15-
 15

acquittal.3 Alvarez contends that the evidence was

insufficient to prove beyond a reasonable doubt that he was

an active participant in the scheme to import cocaine. We

review the evidence to determine whether the evidence as a

whole, taken in the light most favorable to the prosecution,

together with all reasonable inferences favorable to it,

would allow a rational fact finder to conclude beyond a

reasonable doubt that the defendant was guilty as charged.

United States v. Maraj, 947 F.2d 520, 522-23 (1st Cir.
 

1991); United States v. Vargas, 945 F.2d 426, 427-28 (1st
 

Cir. 1991). A conviction may be grounded in whole or in

part on circumstantial evidence. Maraj, 947 F.2d at 523.
 

Moreover, because the jury is entrusted with the

responsibility for making credibility determinations and is

empowered to accept or reject, in whole or in part, a

witness' testimony, we will not weigh witness credibility on

appeal. Maraj, 947 F.2d at 523; Vargas, 945 F.2d at 427. 
 

 

3 Rule 29 provides in relevant part, 

 The court on motion of a defendant or of its own
 motion shall order the entry of judgment of
 acquittal of one or more offenses charged in the
 indictment or information after the evidence on
 either side is closed if the evidence is
 insufficient to sustain a conviction of such offense
 or offenses.

Fed. R. Crim. Proc. 29.

 -16-
 16

 Guilt for aiding and abetting attaches only where

"the defendant associated himself with the venture,

participated in it as in something he wished to bring about,

and sought by his actions to make it succeed." United
 

States v. Rodriguez Cortes, 949 F.2d 532, 539 (1st Cir.
 

1991). Neither mere association with the principal nor mere

presence at the scene of a crime, even when combined with

knowledge that a crime was to be committed, is sufficient to

establish aiding and abetting liability. United States v.
 

Aponte-Suarez, 905 F.2d 483, 491 (1st Cir.) (quoting United
 

States v. Francomano, 554 F.2d 483, 486 (1st Cir. 1977)),
 

cert. denied, 111 S. Ct. 531 (1990). Guided by these
 

standards of review, we are persuaded that Alvarez's

conviction is supported by sufficient evidence of guilt.

There is no dispute that Alvarez was traveling for an

extended period of time with Matos and Flores and that a

very large quantity of cocaine was concealed in the luggage

carried by the group. Moreover, there is sufficient

evidence upon which a reasonable jury could conclude beyond

a reasonable doubt that Alvarez participated in or sought to

assist Flores' scheme to import cocaine into the U.S.

 The evidence established that a Customs Inspector

noticed the group talking "secretively" at the airport; that

 -17-
 17

two of the bags that concealed cocaine carried name tags

bearing Alvarez's name; and that Alvarez and his common law

wife had no means of support other than welfare, food

stamps, and odd jobs and, yet, they could still afford to

fly to Puerto Rico, travel on a cruise ship, stay in a

Venezuelan hotel for several days, and purchase new cloths

to replace those purportedly left on the cruise ship. In

addition, the government was able to highlight certain

inconsistencies in the testimony offered by Flores and

Matos.4 Most significantly, the government produced a

photograph apparently taken on the cruise ship that showed

Matos wearing a striped dress that according to her story

was not purchased until after she disembarked from the ship
 

in Caracas. Matos explained that she was apparently

mistaken about the items of clothing she carried with her

when she left the ship. The government also introduced

evidence that the cruise ship operators searched the cabins

used by Matos, Alvarez, and Flores and did not find the

luggage purportedly left behind by the appellants. The

witness, however, did not conduct the search himself and had

no knowledge of how the search was conducted.

 

4 Alvarez did not testify at trial.

 -18-
 18

 Though the evidence against Alvarez is not

overwhelming, when it is viewed in a light most favorable to

the prosecution it is sufficient to support the verdict.

We, therefore, affirm Alvarez's conviction.

III. Matos' Conviction
 

 In addition to joining in the arguments advanced by

Alvarez, Matos contends that her conviction must be reversed

because the government presented in its case-in-chief an

oral statement allegedly made by Matos which the government

failed to disclose during pre-trial discovery as required by

Fed. R. Crim. P. Rule 16. Specifically, Matos challenges a

portion of the testimony given by Officer Ortiz, a U.S.

Customs Inspector who searched Matos' luggage. Officer

Ortiz testified that during the search he asked Matos if

she had purchased the picture on her trip, to which she

answered "yes." Ortiz's testimony was the only direct

evidence that the incriminating picture belonged to Matos. 

 The substance of Officer Ortiz's testimony came as a

surprise to Matos because she had made two prior requests of

the government -- first by letter on January 11, 1990 and

second by formal motion on January 22, 1990 -- to comply

with the discovery provisions of Rule 16, including a

 -19-
 19

specific request for any "oral statement[s of the defendant]

which the Government intends to offer in evidence at the

trial." The government responded by expressly acknowledging

its obligations under Rule 16 and by producing several

documents. The government, however, made no mention of

Matos' alleged statement at that time or at any time before

the damaging testimony came before the jury. During cross-

examination, Officer Ortiz admitted that his prior testimony

at a preliminary hearing and before a grand jury did not

include any reference to Matos' alleged statement concerning

the picture.

 The following morning, Matos moved to strike Officer

Ortiz's testimony and for the court to admonish the jury to

disregard the testimony. Matos argued that prosecution

records showed that Officer Ortiz had told the government of

Matos' alleged statement in April 1990, but that the

government failed to produce the statement despite repeated

requests by Matos. The judge denied the motion without

giving an explanation.

 Rule 16 imposes an obligation on both the criminal

defendant and the government to produce or disclose to the

opposing party certain relevant evidence prior to trial.

 -20-
 20

The provisions of Rule 16(a)(1)(A) in effect at the time of

trial provided, in relevant part:

 Upon request of a defendant the government
 shall permit the defendant to inspect and
 copy . . . the substance of any oral
 statement which the government intends to
 offer in evidence at the trial made by the
 defendant whether before or after arrest in
 response to interrogation by any person then
 known by the defendant to be a government
 agent. 

Fed. R. Crim. P. 16(a)(1)(A). These mandatory discovery

provisions are intended to contribute to the fair and

efficient administration of criminal justice by providing

the defendant with sufficient information upon which to base

an intelligent a plea; by minimizing the undesirable effect

of surprise at trial; and by contributing to the accuracy of

the fact finding process. Fed. R. Crim. P. 16, advisory
 

committee's note. Where a party fails to comply with these
 

discovery provisions, Rule 16 empowers the district court to

order the party to comply with the rule, grant a

continuance, exclude the non-complying evidence, or enter

other such relief as it considers just. Fed. R. Crim. P.

16(d)(2). We review a district court's ruling on the effect

of a failure to provide pretrial discovery only for abuse of

discretion. United States v. Nickens, 955 F.2d 112, 126
 

(1st Cir.), cert. denied, 113 S. Ct. 108 (1992); Rodriguez
 

 -21-
 21

Cortes, 949 F.2d at 546; see Fed. R. Crim. P. 16(d)(2). To
 

succeed in obtaining a reversal on appeal, a defendant must

prove both an abuse of discretion and prejudice. Nickens,
 

955 F.2d at 126; Rodriguez Cortes, 949 F.2d at 546. We
 

reverse.

 We believe the trial court erred when it denied

Matos' motion to exclude the alleged statement or to hold a

suppression hearing without first making a finding as to

whether the government acted in bad faith and whether Matos

was prejudiced by admission of the statement. We generally

defer to the judgment of a district judge who is better

suited to make factual determinations based on first hand

observation of the evidence. In this case, however, the

judge failed to make even a threshold inquiry into the

circumstances leading to nondisclosure of the statement.

The court neither heard evidence nor made factual findings

concerning the potential prejudice flowing from a discovery

violation, the relative importance of Ortiz's testimony, and

the existence of prosecutorial bad faith. See Nickens, 955
 

F.2d at 126. This was error.

 Moreover, this error prejudiced appellant Matos.

The alleged Matos statement provided a critical link between

Matos and the effort to smuggle the cocaine laden picture

 -22-
 22

frame into Puerto Rico. To establish guilt for aiding and

abetting, "the government must prove that the defendant

associated himself with the venture, participated in it as

in something he wished to bring about, and sought by his

actions to make it succeed." Rodriguez Cortes, 949 F.2d at
 

539 (quoting United States v. Garcia-Rosa, 876 F.2d 209, 217
 

(1st Cir. 1989), cert. denied, 493 U.S. 1030 (1990)). The
 

statement attributed to Matos was a very significant piece

of evidence that indicated Matos was a participant in the

crime, rather than merely being an innocent bystander

present at the scene of a crime. Similarly, the alleged

statement fundamentally sabotaged Matos' defense that she

was an unwitting participant in Flores' cocaine trafficking

venture. There is a substantial likelihood that the

statement figured prominently in the jury's decision to

reject Flores' account of the incident, which wholly

exculpated appellants. 

 Given the central importance of the alleged

statement, the government's failure to disclose it as

required by Rule 16 had additional grave consequences for

Matos. First, Matos was deprived of any meaningful

opportunity to investigate the circumstances of her alleged

statement and to attempt to suppress it. Significantly, the

 -23-
 23

government disclosed during pretrial discovery a statement

made by Alvarez, which Alvarez successfully suppressed.

Second, not knowing of the alleged statement, Matos was

deprived of the opportunity to design an intelligent

litigation or plea strategy that responded to the alleged

statement. 

 The government contends that no prejudice attached

because "it is doubtful that counsel for appellant would not

anticipate or contemplate that such a statement might

exist." Even if this argument were not inconsistent with

the mandatory language of Rule 16, we would flatly reject it

as being incompatible with common sense and fundamental

fairness. The government also contends that the cross-

examination of Officer Ortiz effectively impeached his

testimony and essentially cured whatever prejudice might

have existed. While we have sometimes considered effective

cross-examination of witness when weighing potential

prejudice presented by that witness' testimony, Nickens, 955
 

F.2d at 126; United States v. Samalot Perez, 767 F.2d 1, 4
 

(1st Cir. 1985), those cases involved the admission of

cumulative evidence that was regarded as harmless error. In

this case, the alleged statement was vital to the

conviction.

 -24-
 24

 Finally, the government argues that since Matos did

not present the trial judge with any specific grounds for

suppressing the alleged statement, the district court

correctly denied Matos' request for a suppression hearing.

During a discussion with Matos' counsel, the judge

repeatedly asked if the defendant had any grounds to

suppress the statement. Counsel responded that he learned

of the statement only the day before, that he had no

information regarding the statement, and when pressed by the

judge, stated that at that time he had no grounds to
 

suppress the statement other than the violation of Rule 16.

We are not surprised that Matos was unprepared to articulate

a particular ground for suppressing the statement under

these circumstances and in the middle of a trial. The one

possible curative course, suspending the trial and holding a

suppresion hearing, was erroneously rejected by the district

court. 

 The government is wholly responsible for unfairly

surprising the defendant and should not benefit from its own

violation of Rule 16.

 In summary, we affirm the conviction of Alvarez and

reverse and remand for a new trial as to Matos.

 -25-
 25